UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. COMMODITY FUTURES TRADING
COMMISSION,

                              Plaintiff,

        - against -

EFLOORTRADE, LLC; and JOHN A.
MOORE,

                              Defendants.

**MEMORANDUM
OPINION & ORDER**

16 Civ. 7544 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

This is a civil enforcement action brought by the U.S. Commodity Futures

Trading Commission ("CFTC") against Defendants eFloorTrade, LLC and John Moore. The

CFTC alleges that, between October 2010 and October 2015 (the "Relevant Period"), Defendants

(1) made false or misleading statements to the CFTC, in violation of 7 U.S.C. § 9(2); (2) failed to

keep and produce required books and records, in violation of 7 U.S.C. § 4g(a), 17 C.F.R. §§

1.31(a)(1) and (2), and 17 C.F.R. §§ 1.35(a)(1) and (3); (3) failed to make and/or prepare

required records, in violation of 7 U.S.C. § 4g(a) and 17 C.F.R. § 1.35; and (4) failed to

supervise, in violation of 17 C.F.R. § 166.3. (Cmplt. (Dkt. No. 1))

The Court granted the CFTC summary judgment as to liability. (Order (Dkt. No.

63)) The CFTC now moves for a permanent injunction and civil monetary penalties. (Pltf. Br.

(Dkt. No. 93)) For the reasons stated below, the CFTC's motion for injunctive relief will be

granted to the extent that Defendants will be (1) permanently enjoined from committing the

conduct for which they were found liable; and (2) enjoined from registering with the CFTC or

acting as a principal of any person registered with the CFTC for five years.[1]  The Court will also

impose an $80,000 civil monetary penalty on Defendants for the supervisory and recordkeeping

violations (Counts Two through Four) and a $140,000 civil monetary penalty on Moore for

making false statements to the CFTC (Count One).

## BACKGROUND

I.   **FACTS**[2]

    A.   **The Parties**

The CFTC is responsible for administering and enforcing the provisions of the

Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 et seq. (2012), and the regulations

promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (the "Regulations").  (Order (Dkt. No. 63) at 1)

Defendant eFloorTrade provides trade execution services to customers who have

subscribed to third party trading systems ("TPTSs") located throughout the United States,

including in this District.  (Id.)  TPTS customers provide eFloorTrade with a letter of direction

instructing the company to place buy or sell orders on their behalf.  (Id.)  When an eFloorTrade

customer uses a TPTS, trading instructions or signals are electronically sent to eFloorTrade, and

the company then electronically places orders on behalf of its customers with a futures

commission merchant.  (Id.)  The instructions sent to eFloorTrade include the specific futures

contract to trade, whether to buy or sell, and a stop price.  (Id.)  Since April 3, 2000, eFloorTrade

has been registered with the CFTC as an "introducing broker."[3]  (Id.)

---

[1]  As discussed below, these restrictions will not apply to eFloorTrade if it is a party to a guarantee agreement with a registered futures commission merchant pursuant to Regulation 1.10(a)(4) and (j), 17 C.F.R. § 1.10(a)(4), (j) (2018).

[2]  The facts are drawn from this Court's September 21, 2018 Order granting the CFTC summary judgment as to liability.  (Order (Dkt. No. 63))

[3]  An "introducing broker" is "[a]ny person who, for compensation or profit, whether direct or indirect" –

Defendant John Moore ("Moore") has been registered with the CFTC as an "associated person" of eFloorTrade since April 2000.[4]  (Id. at 3)  He has been registered with the CFTC as an associated person and principal with other CFTC registrants since August 1988. (Id.)

eFloorTrade is wholly owned and operated by Moore and members of his immediate family, including his son Chris Moore and his wife Ann Moore.  (Id.)  Chris Moore monitors trades placed on behalf of TPTS customers, and is familiar with the records that eEloorTrade is required to make and keep concerning these customers.  (Id.)  Ann Moore is eFloorTrade's bookkeeper and handles certain compliance duties.  (Id.)

Moore, who holds Series 3 (National Commodity Futures) and Series 30 (Branch Manager) licenses, is the managing member, majority owner, and chief compliance officer of eFloorTrade.  (Id.)  In those roles, Moore is responsible for (1) ensuring that eFloorTrade complies with its obligations under the Act and Regulations; (2) adopting and enforcing

---

(i) Is engaged in soliciting or in accepting orders (other than in a clerical capacity) for the purchase or sale of any commodity for future delivery, security futures product, or swap; any agreement, contract or transaction described in section 2(c)(2)(C)(i) or section 2(c)(2)(D)(i) of the Act; any commodity option transaction authorized under section 4c; or any leverage transaction authorized under section 19; or who is registered with the Commission as an introducing broker; and

(ii) Does not accept any money, securities, or property (or extend credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom.

17 C.F.R. § 1.3(mm) (2013).

[4]  An "associated person" is anyone who is associated with, inter alia, a futures commissions merchant or introducing broker as a partner, officer, or employee in any capacity which involves "(i) the solicitation or acceptance of customers' orders (other than in a clerical capacity) or (ii) the supervision of any person or persons so engaged."  17 C.F.R. § 1.3(aa) (2013).

eFloorTrade's internal policies and procedures; (3) supervising eFloorTrade's employees, officers, and agents in all aspects of their duties; (4) preparing eFloorTrade's financial books and records; and (5) ensuring that eFloorTrade maintains trading instructions or signals received from TPTSs. (Id. at 3-4) Moore is also responsible for overseeing each day's trading activity; for calculating eFloorTrade's required net capital; for reconciling the prior day's executed transactions; for monitoring customer trading to detect unusual or suspicious activity; and for ensuring that eFloorTrade is paid commissions for the orders it places on behalf of its customers. (Id. at 4)

As a designated Branch Manager, Moore is also responsible for supervising sales solicitations, approving customer account forms, reviewing and responding to customer complaints, and training staff. (Id.)

During the Relevant Period, eFloorTrade received $2,438,012 in commissions and paid $28,140 in fees to futures commission merchants, resulting in net commissions of $2,409,872. (Id.) As of September 2015, eFloorTrade had approximately a hundred customers, including both self-directed customers who were trading pursuant to a TPTS, and customers with accounts managed by a trading advisor. (Id.)

Each year between 2010 and 2015, Moore signed the National Futures Association's annual self-examination questionnaire, affirming that eFloorTrade's written procedures were adequate to meet its regulatory responsibilities. (Id.)

**B.**     **Defendants' Regulatory Obligations**

An introducing broker's recordkeeping obligations are set forth in Section 4g(a) of the Act, 7 U.S.C. § 6g(a) (2012) and Commission Regulations 1.31(a), 1.35(a) and (b), 17

C.F.R. §§ 1.31(a), 1.35(a) and (b) (2013).[5] (Id. at 4-5)  Under the Act and Regulations,

eFloorTrade must prepare and keep certain records, and produce them to the CFTC on demand.

(Id. at 5 (citing 7 U.S.C. § 6g(a), 17 C.F.R. §§ 1.31(a), 1.35(a))  For example, Defendants are

required to maintain complete and systematic records concerning their commodity futures

business, including all pertinent data and memoranda of transactions, 17 C.F.R. § 1.35(a)(l), all

orders (filled, unfilled, or cancelled), id., and order tickets or other written records of orders that

eFloorTrade receives from or on behalf of a customer, 17 C.F.R. § 1.35(b)(l).  (Id.)  All required

books and records must be kept for five years, and "records exclusively created and maintained

on paper [must be] readily accessible for no less than two years" after their creation.  17 C.F.R.

§ 1.31(b).  (Id.)  eFloorTrade was also obligated to immediately provide, at the CFTC's request,

"easily readable hard-copy image[s]" of required records, and to provide required records in an

electronic format specified by the CFTC.  (Id. (citing 17 C.F.R. § 1.31(a)(2), (b)(2)(ii)))

　　　　During the Relevant Period, eFloorTrade received signals or instructions for

TPTS customers through an electronic trading platform known as TradeStation, which ran on a

computer located in eFloorTrade's offices.  (Id.)  Under the Act and Regulations, eFloorTrade

was obligated to keep or preserve all of the original signals or instructions received on

TradeStation.  (Id.)  Moore also received a text message on his cell phone with a duplicate copy

of the trading instructions or signals received from one particular TPTS, TrendFinder, and

Defendants were required to retain these text messages under the Act and Regulations.  (Id.)

---

[5]  During the Relevant Period, Commission Regulations 1.31(a) and 1.35(a) were amended, but
these amendments did not alter any existing recordkeeping requirements that are germane to this
case.  (Order (Dkt. No. 63) at 5 n.4)  Accordingly, this Opinion & Order cites the 2013 version of
the applicable recordkeeping regulations.

Because Moore is a registered associated person with supervisory responsibilities, and because eFloorTrade is a registered introducing broker, both Defendants are obligated to diligently supervise the handling of customer accounts.  (Id. at 6)  Under Commission Regulation 166.3, 17 C.F.R. § 166.3, registrants such as Moore and eFloorTrade are required to diligently supervise the handling by their partners, employees, and agents of all activities relating to their business as a CFTC registrant.  (Id.)  Moreover, registrants such as Moore and eFloorTrade have an affirmative duty to establish, implement, and enforce an adequate supervisory system and must perform their supervisory duties diligently.  (Id.)

C.  **Stipulation Concerning Defendants'
    Recordkeeping and Supervisory Obligations**

In a July 25, 2017 stipulation (Stipulation (Dkt. No. 51-20)), the parties agreed that:

1. From October 2010 to October 2015 ("Relevant Period"), [eFloorTrade] violated its recordkeeping obligations under Section 4g(a) of the Commodity Exchange Act (the "Act") and Commission Regulations 1.31 and 1.35 when at various times, (through the conduct of Moore and/or [eFloorTrade]'s employees, officers and agents) it failed to keep full, complete, and systematic records of all transactions relating to its business of dealing in commodity futures for a period of five years from the date thereof, and to produce them for inspection to the CFTC.  These records included, but are not limited to: (1) trading instructions or trading signals [eFloorTrade] electronically received from a third party trading system provider specifying the commodity interest to be bought or sold for a customer's account, and (2) a written record of all customer orders (filled, unfilled or cancelled).

2. Moore directly and indirectly controlled [eFloorTrade] and its employees. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Moore is liable as a controlling person for [eFloorTrade]'s violations stipulated to in paragraph 1.

. . . .

4. [eFloorTrade] also violated Section 4g(a) of the Act and Regulation 1.35 when at various times (through the conduct of Moore and/or [eFloorTrade]'s employees, officers and agents) it failed to prepare, immediately upon receipt, a written record of [eFloorTrade]'s customer's order including account

identification and order number and record thereon, by timestamp or other timing device, the date and time, to the nearest minute, the order was received for its customer who subscribed to a third party trading system.

5. Moore directly and indirectly controlled [eFloorTrade] and its employees. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Moore is liable as a controlling person for [eFloorTrade]'s violations stipulated to in paragraph 4.

. . . .

7. [eFloorTrade] also violated Regulation 1.31, when at various times (through the conduct of Moore and/or [eFloorTrade]'s employees, officers and agents) it failed to provide to the [CFTC] records such as trading instructions or signals and a written record of customer orders in an easily readable hard copy image or on such data processing media approved by the [CFTC].

8. Moore directly and indirectly controlled [eFloorTrade] and its employees. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Moore is liable as a controlling person for [eFloorTrade]'s violations stipulated to in paragraph 7.

. . . .

11. [eFloorTrade] and Moore violated Regulation 166.3, 17 C.F.R. § 166.3 (2015), in that they, among other things, did not diligently supervise the handling of commodity interest accounts and all other activities of [eFloorTrade]'s partners, officers, employees and agents. [eFloorTrade] and Moore failed to design, implement, maintain, and enforce an adequate program of supervision to meet its regulatory obligations. Their supervision failures consisted in part of the following: 1) failing to design, implement, maintain and enforce an adequate program of supervision to ensure compliance with [eFloorTrade]'s recordkeeping obligations under section 4g of the Act and Regulations 1.31 and 1.35; 2) failing to design, implement, maintain, and enforce an adequate program of supervision to ensure compliance with [eFloorTrade]'s own internal policies and procedures; and 3) failing to design, implement, maintain and enforce an adequate program of supervision to handle routine margin calls for [eFloorTrade]'s customers.

(Order (Dkt. No. 63) at 6-7 (quoting Stipulation (Dkt. No. 51-20) ¶¶ 1-2, 4-5, 7-8, 11))

D.     **CFTC's Requests for Records**

In a March 11, 2014 letter, the CFTC requested that Defendants produce certain books and records that eFloorTrade is required to make and maintain for five years under the Act and Regulations.  (Id. at 7)  The items requested included, inter alia, order tickets.  (Id.)

eFloorTrade did not produce the requested order tickets or any written record of customer orders. (<u>Id.</u>)

In an October 23, 2015 letter to eFloorTrade, the CFTC requested "[a]ll documents created or received when [eFloorTrade] executes transactions for a subscriber following the trading instructions or signals received from a third party trading system." (<u>Id.</u> at 8) Defendants did not produce order tickets or equivalent written records. (<u>Id.</u>) Instead, Defendants stated in a November 12, 2015 letter that "[w]hen [eFloorTrade] executes transactions for subscribers of third party trading systems, no document is created or received." (<u>Id.</u>) Defendants further stated that eFloorTrade "does not maintain any documents regarding the handling of trade orders, other than the procedures manual for customers who ha[ve] given [eFloorTrade] authorizations to follow the trading instructions or trading signals of a third party trading system." (<u>Id.</u>)

On December 8, 2015, the CFTC sent a follow-up request for production of the trading signals or instructions that eFloorTrade receives from TPTSs. (<u>Id.</u>) Defendants produced a zip drive on December 16, 2015 that Defendants claimed contained these trading signals, but the zip drive did not contain "easily readable hard copy image[s]," nor was it on "data processing media approved by the [CFTC]." (<u>Id.</u>)

### E.   <u>Moore's September 18, 2015 Testimony</u>

Moore testified before the CFTC on September 18, 2015. (<u>Id.</u>) Before his testimony began, Moore – who was represented by counsel – received written notice of the potential penalties for providing false testimony to the CFTC. (<u>Id.</u>) Moore testified that he understood his obligation to testify truthfully; that there was no reason why he could not testify fully, completely, and truthfully; and that nothing was impairing his ability to testify truthfully

and accurately. (Id.) During his September 18, 2015 testimony, when Moore did not understand a question he sought clarification, and when a question or answer was stated incorrectly, he corrected the record. (Id. at 8-9)

In response to a question about how eFloorTrade maintained trading signals, Moore testified that eFloorTrade made and kept an Excel spreadsheet listing the trading instructions or signals received from a TPTS (the "Spreadsheet"). (Id.) Moore testified about the Spreadsheet at length, giving details about how it was made and kept, and how the actual trades were input into the Spreadsheet. (Id.) Moore testified that, each day, he and Chris Moore manually input into the Spreadsheet the trading instructions or signals received on behalf of TPTS customers the day before. (Id.) Moore also testified that he and Chris Moore used the Spreadsheet on a daily basis to compare trades that were executed for eFloorTrade customers with the trading instructions or signals received by eFloorTrade on behalf of those customers. (Id.) Moore testified that he saved a copy of the Spreadsheet daily. (Id.) He also testified that the Spreadsheet was password-protected and that only he, Chris Moore, and an information technology employee had the password. (Id.)

Two months later, however – in a November 12, 2015 letter to the CFTC – Defendants stated that eFloorTrade "does not create or maintain any spreadsheets relating to trades placed in accordance with a third party trading system." (Id. (quoting Def. Resp. to Pltf. R. 56.1 Stmt. (Dkt. No. 57) ¶ 68)) Moore has admitted that he "made certain statements about a spreadsheet [during his September 18, 2015 testimony] that were inaccurate." (Id. (quoting Moore Aff. (Dkt. No. 58-1) ¶ 3))

At the time that Moore provided testimony to the CFTC, he was aware that eFloorTrade was a registered introducing broker and as such was obligated to make and keep

certain books and records. (Id.) Because the trading instructions and signals that eFloorTrade receives from TPTSs are part of an audit trail relating to customer orders, eFloorTrade's failure to make, keep, and produce these records impaired the CFTC's ability to comprehensively examine the audit trail of records relating to customer orders. (Id. at 9-10)

### F. Moore's Deposition

Moore was deposed in the instant case on August 1, 2017. (Moore Dep. (Dkt. No. 51-8)) During his deposition, Moore described a spreadsheet that he had "found" "months" after his September 2015 testimony,[6] and testified that this document was the spreadsheet he had described during that testimony. (Id. at 57-58, 60-64) As the deposition proceeded, however, Moore admitted that the newly discovered spreadsheet did not contain, inter alia, (1) signal or trading instructions; (2) the type of commodity that was traded on any given day; (3) the price of any commodity bought or sold; (4) whether the commodity was bought or sold; and (5) a comparison of the information regarding executed trades with the information found in the underlying trading signals. (Id. at 104, 111-13) Moore claimed, however, that using the newly discovered spreadsheet and other information that eFloorTrade had in its possession, he could create a spreadsheet that set forth the actual trades and trading signals. (Id. at 133-37)

Moore further testified that, during his September 2015 testimony, he had stated that the spreadsheet "was a work in progress. It wasn't finished." (Id. at 122) When CFTC counsel challenged Moore on this point (id.), however, Moore stated: "[I] [m]ust have made a

---

[6] Moore claimed that he had not produced the spreadsheet earlier because he "just couldn't find it": "I have thousands of files and folders on my computer . . . . I'm not the best organized in labeling . . . folders and files, and it's very time consuming for me to go through and try to find everything. When you request something and you request all, it takes me a long time to go find all of everything." (Moore Dep. (Dkt. No. 51-8) at 57, 71)

mistake, left something out, you know.  People make mistakes."  (Id. at 123; see also id. at 131-32)

CFTC counsel then showed Moore a spreadsheet that appeared to reflect trading signals and actual trades between November 30, 2015 and December 14, 2015 – a period that post-dated Moore's September 2015 testimony.  (Id. at 152-57; see also Chris Moore Dep. (Dkt. No. 51-15) at 100-01)  Chris Moore had testified during his deposition that this spreadsheet – the "Chris Moore Spreadsheet" – was a "work in progress" that had been "scrap[ped]" because certain trading instructions could not be reconciled with certain trade data.  (Chris Moore Dep. (Dkt. No. 51-15) at 98-99, 102)  When asked whether the Chris Moore Spreadsheet was "the spreadsheet in progress that [he had been] talking about?" Moore testified, "[y]es."  (Moore Dep. (Dkt. No. 51-8) at 157)

Chris Moore had testified, however, that the process of creating the Chris Moore Spreadsheet did not begin until November 2015 (Chris Moore Dep. (Dkt. No. 51-15) at 104), and Moore did not dispute that testimony.  (Moore Dep. (Dkt. No. 51-8) at 167 ("I don't know the answer to [] when [Chris] started."); see also id. at 169 ("Q. . . . [W]as there a spreadsheet that was actually in existence that compared the trading instructions and signals to the hypotheticals or to the actual trades that were executed?  A.  There was not one spreadsheet for that, no."))  Accordingly the Chris Moore Spreadsheet had not been extant as of Moore's September 2015 testimony.  (Order (Dkt. No. 63) at 11)

G.    **Defendants' Affidavits**

In opposing the CFTC's motion for summary judgment, Moore submitted an affidavit in which he claimed that he "would never knowingly or intentionally make a false statement under oath"; that it "was never [his] intent to mislead or deceive the CFTC"; and that

he "made a mistake."  (Moore Aff. (Dkt. No. 58-1) ¶ 8)  Moore further states in his affidavit that

he "receive[s] hundreds if not thousands of documents a week, and [] simply was mistaken."  (Id.

¶ 4)[7]

In his affidavit, Moore also complains that he was not given an opportunity to

review his September 2015 testimony until eighteen months later, and that he "would have

corrected [his] mistaken testimony" if he had been given "the opportunity to review" that

testimony.  (Id. ¶¶ 5-7)

## II.    NATIONAL FUTURES ASSOCIATION DISCIPLINARY PROCEEDINGS

On January 14, 2014, the National Futures Association (the "NFA"), a self-

regulatory agency for the futures industry, issued a complaint against respondents eFloorTrade,

Moore, and others, charging them with violations of NFA rules.[8]  (NFA Cmplt. (Dkt. No. 51-

40))  On December 31, 2014, an NFA hearing panel issued a decision accepting the respondents'

offer of settlement.  (NFA Decision (Dkt. No. No. 51-41))  In that decision, the panel made the

following findings:  (1) eFloorTrade failed to follow registration procedures; (2) eFloorTrade

"offset[] trades in customer accounts so as to liquidate enough positions to eliminate or avoid a

margin call and then, a day or two later, acquiring new positions for these customer accounts that

were identical to the positions that were liquidated," and (3) eFloorTrade and Moore failed to

---

[7]  Defendants' prior counsel, James Koch, who is now deceased (Def. Opp. (Dkt. No. 99) at 26;
Pltf. Reply (Dkt. No. 96) at 5), submitted an affidavit in which he states that "Moore believed his
testimony [in September 2015] to be truthful and accurate," and that, "[i]n [Koch's] opinion,
Moore was merely mistaken as to his testimony regarding 'a spreadsheet.'"  (Koch Aff. (Dkt.
No. 58-3) ¶¶ 5, 10)  Koch was not competent to testify about Moore's state of mind during his
September 2015 testimony, however, and accordingly this Court disregarded his speculation in
ruling on Plaintiff's summary judgment motion.  (Order (Dkt. No. 63) at 12 n.8)

[8]  The NFA complaint alleges rule violations that are not at issue in this lawsuit.  See NFA
Cmplt. (Dkt. No. 51-40).  Nevertheless, as discussed below, the CFTC cites Defendants'
violation of NFA rules to justify the injunctive relief and penalties it seeks.

adequately supervise eFloorTrade's operations and employees.  (Id. at 3-4)  As part of the

settlement, eFloorTrade and Moore each paid a $15,000 fine.  (Id. at 5-6)

        After the issuance of the 2014 decision, the NFA commenced an investigation to

examine certain books and records of eFloorTrade as of May 31, 2016 (four months before this

action was commenced).  (Iverson Decl. (Dkt. No. 97) ¶ 9)  The resulting examination report,

which the NFA issued in November 2016, found that eFloorTrade had not:  (1) maintained

current financial books and records; (2) maintained records of signals for certain trading

programs; (3) provided accurate records for historical signals for a specific trading program; and

(4) properly supervised its employees and operations.  (Id. ¶¶ 9-10; Pltf. Reply (Dkt. No. 96) at

8)  Although the report threatened disciplinary action, there is no indication in the record that the

NFA took such action.  (Iverson Decl., Ex. A (Dkt. No. 97-1) at 1)

## III.    THE COURT'S SUMMARY JUDGMENT DECISION AND PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF AND MONETARY PENALTIES

### A.    Summary Judgment on Liability

        On September 21, 2018, the Court granted the CFTC's motion for summary

judgment as to liability on all four counts.  (Order (Dkt. No. 63))  As to the recordkeeping and

supervisory violations charged in Counts Two, Three, and Four, the Court found that Defendants

stipulated to committing the underlying conduct that made them liable for these violations.  (Id.

at 13-14)  Although Defendants argued that the violations were de minimis, the Court rejected

that argument, finding that they reflected a "complete and utter failure to satisfy statutory and

regulatory obligations."  (Id. at 14)  The Court further noted that, in any event, there is no de

minimis exception for the recordkeeping violations.  (Id. (citing 17 C.F.R. §§ 1.31, 1.35, 166.3;

In re Kelly, CFTC No. 97-6, 1998 WL 802091, at *10 (CFTC Nov. 19, 1998) ("Registrants are

strictly liable for recordkeeping violations, for which a showing of scienter is not required."); In

re Rousso, CFTC No. 91-3, 1997 WL 422859, at *9 (CFTC July 29, 1997) ("Rousso . . . argues that summary disposition was improper because there was a question of fact whether Rousso failed to maintain trading records. However, he acknowledges that 'some trading cards were not found.' This argument suggests that the [CFTC] should recognize a good faith effort by respondents to maintain their records. Regulation 1.31, however, requires all records to be maintained. Once respondents conceded that some records were missing, the facts establishing recordkeeping violations became undisputed. In such circumstances, summary disposition is appropriate.")) Accordingly, the Court granted the CFTC's motion for summary judgment as to liability on Counts Two, Three, and Four. (Id.)

As to Count One – the false statements charge – the Court noted that Section 6(c)(2) of the Act requires the CFTC to prove, by a preponderance of the evidence, that: (1) a false or misleading statement was made to the CFTC; (2) the statement was material; and (3) the author of the statement knew or reasonably should have known that the statement was false or misleading. (Id. at 15 (citing 7 U.S.C. § 9(2); CFTC v. Vartuli, 228 F.3d 94, 100 (2d Cir. 2000); CFTC v. Arista LLC, No. 12 CV 9043 PAE, 2013 WL 6978529, at *13 (S.D.N.Y. Dec. 3, 2013); In re Bielfeldt, CFTC No. 96-1, 2004 WL 2785293, at *11 (CFTC Dec. 2, 2004)))

As to whether Moore made a false or misleading statement to the CFTC, the Court found that he indisputably provided false testimony to the CFTC on September 18, 2015. (Id. at 16) Moore falsely testified that (1) eFloorTrade maintained a spreadsheet listing the trading instructions or signals received from TPTSs; (2) he and Chris Moore manually input trading instructions received on behalf of TPTS customers into that spreadsheet each day; and (3) he and Chris Moore used the spreadsheet on a daily basis to compare trades that eFloorTrade had executed for customers with the trading instructions or signals received by eFloorTrade on behalf

of those customers.  (Id.)  As of Moore's testimony on September 18, 2015, Defendants had not,

in fact, maintained any spreadsheet reflecting trading signals and actual trades.  (Id.)

Accordingly, the Court concluded that the CFTC had proven the first element of a Section

6(c)(2) violation.  (Id. at 17)

As to materiality, the Court found that, as of September 18, 2015, the CFTC's

investigation of eFloorTrade indisputably required an examination of eFloorTrade's records

concerning trading instructions or signals received from TPTSs.  (Id.)  Accordingly, when Moore

testified falsely regarding eFloorTrade's maintenance of a spreadsheet reflecting such

information, his testimony was "capable of influencing[] the decision of the [CFTC]" as to

whether to bring recordkeeping charges against Defendants.  (Id. (quoting United States v.

Adekanbi, 675 F.3d 178, 182 (2d Cir. 2012))  Moore's testimony also tended to "distract[] [the

CFTC's] attention away from" a central subject of its investigation – whether Defendants made

and maintained the required records concerning trading.  (Id. (quoting Adekanbi, 675 F.3d at

182).  Accordingly, the Court found that the second element of a Section 6(c)(2) violation was

established.

As to the final element, the Court found that Moore knew, or reasonably should

have known at the time, that his September 18, 2015 testimony concerning the alleged

spreadsheet was false and misleading.  (Id.)  Moore was responsible for, inter alia, ensuring that

eFloorTrade complied with its obligations under the Act and Regulations, reconciling the prior

day's executed transactions, adopting and enforcing eFloorTrade's internal policies and

procedures, preparing eFloorTrade's financial books and records, and ensuring that eFloorTrade

kept the trading instructions or signals received from TPTSs.  (Id. at 17-18)  Given these

responsibilities, Moore either knew or should have known whether eFloorTrade maintained a spreadsheet reflecting trading signals and actual trades. (Id. at 18)

In testifying on September 18, 2015, that he personally updated and saved the spreadsheet containing trading information on a daily basis, Moore knowingly and falsely represented that such a spreadsheet existed. (Id. (citing CFTC v. Int'l Fin. Servs. (New York), Inc., 323 F. Supp. 2d 482, 509 (S.D.N.Y. 2004) ("[T]o view the evidence in the light most favorable to the nonmoving party, resolving ambiguities and drawing all inferences in its favor, is not to suspend disbelief.") (internal citations omitted)))

This Court rejected Moore's post hoc, conclusory, and self-serving statements that "it was never [his] intent to mislead or deceive the CFTC," that he "made a mistake," and that he "would have corrected [his] mistaken testimony" if he had been able to review the transcript. (Id. (quoting Moore Aff. (Dkt. No. 58-1) ¶¶ 4-8) (citing e.g. Cain v. Esthetique, 182 F. Supp. 3d 54, 62 (S.D.N.Y. 2016) ("'The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forth some affirmative indication that his version of relevant events is not fanciful.'") (quoting Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997))) The Court found that Moore's claim that he would have corrected his testimony if he had had an opportunity to review it had no bearing on his state of mind on September 18, 2015. (Id. at 19 (citing Moore Aff. (Dkt. No. 58-1) ¶ 7))

The Court also found that Moore's self-serving claim that it "was never [his] intent to mislead or deceive the CFTC" (id. (quoting Moore Aff. (Dkt. No. 58-1) ¶ 8)) ignored the standard for liability under Section 6(c)(2), which makes it "unlawful for any person to make any false or misleading statement of a material fact to the [CFTC] , . . . if the person knew, or reasonably should have known, the statement to be false or misleading." (Id. (quoting 7 U.S.C. §

9(2) (emphasis in Order (Dkt. No. 63)))  Moreover, Moore's claim that he had "made a mistake" was not probative, because he did not specify which statements were mistakenly made.  (Id. (quoting Moore Aff. (Dkt. No. 58-1) ¶ 8))  In sum, the undisputed evidence showed that Moore knew, or reasonably should have known, that his testimony was false and misleading.  (Id.) Accordingly, the CFTC's motion for summary judgment as to liability on Count One was granted.  (Id.)

### B.    Order Denying Reconsideration

On November 13, 2018, Defendants moved for reconsideration of this Court's order granting summary judgment.  (Moore Br. (Dkt. No. 76))  The Court denied the motion, because Defendants had not cited (1) an intervening change in controlling law, (2) new evidence not previously available, (3) clear error, or (4) a manifest injustice that would result from not granting the motion.  (Dkt. No. 86 (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992))  The Court noted, inter alia, that Moore was attempting to improperly "disavow" the stipulation that Defendants had entered into regarding their supervisory and recordkeeping violations, even though Moore had signed the stipulation.  (Id.) The Court ruled that Moore's disavowal did not constitute new evidence or otherwise satisfy the reconsideration standard.  (Id.)

### C.    CFTC's Motion for Injunctive Relief and Civil Monetary Penalties

On May 21, 2019, the CFTC moved for injunctive relief and civil monetary penalties against Defendants.  (Pltf. Br. (Dkt. No. 93))  The CFTC seeks the following relief: (1) a joint and several civil monetary penalty in the amount of $1,120,000 against Defendants, and an additional penalty in the amount of $420,000 against Moore; (2) a permanent injunction restraining, enjoining and prohibiting:  (a) Defendants from directly or indirectly committing the

conduct for which the Court has found them liable; (b) Moore from applying for registration or

claiming exemption from registration with the CFTC in any capacity and engaging in any

activity requiring such registration or exemption from registration except as provided for in

Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018) ("Registration Ban"); and (c) Moore from

acting as a principal, agent or any other officer or employee of any person registered, exempted

from registration or required to be registered with the [CFTC] except as provided for in 17

C.F.R. § 4.14(a)(9) ("Principal Ban").  (Pltf. Br. (Dkt. No. 93) at 5)  Finally, the CFTC seeks a

Registration Ban and Principal Ban against eFloorTrade, unless eFloorTrade is a party to a

guarantee agreement with a registered futures commission merchant pursuant to Regulation

1.10(a)(4) and (j), 17 C.F.R. § 1.10(a)(4), (j) (2018), whereby the registered futures commission

merchant agrees to act as a guarantor that will be jointly and severally liable for eFloorTrade's

obligations under the Act and Regulations.  (Id. at 5-6)  Defendants oppose the CFTC's motion,

contending that the sanctions sought by the CFTC are excessive and unwarranted.  (Def. Opp.

(Dkt. No. 99) at 5)

## DISCUSSION

## I.   INJUNCTIVE RELIEF

### A.   Legal Standard

Section 6c(b) of the Commodity Exchange Act provides that

> [w]henever it shall appear to the [CFTC] that any registered entity or other person
> has engaged, is engaging, or is about to engage in any act or practice constituting
> a violation of any provision of this chapter or any rule, regulation, or order
> thereunder, or is restraining trading in any commodity for future delivery or any
> swap, the [CFTC] may bring an action . . . to enjoin such act or practice, or to
> enforce compliance with [the Act]. . . .

7 U.S.C. § 13a-1(a).  When seeking a statutory injunction, "the CFTC 'need not prove

irreparable injury or the inadequacy of other remedies as required in private injunctive suits.'"

CFTC v. McDonnell, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018), reconsideration denied, 321 F.

Supp. 3d 366 (E.D.N.Y. 2018) (quoting CFTC v. British Am. Commodity Options, 560 F.2d

135, 141 (2d Cir. 1977)).

   "The Commodity Exchange Act authorizes the granting of permanent injunctive

relief." CFTC v. McCrudden, No. 10-CV-5567 (DRH) (AKT), 2018 WL 2075433, at *2

(E.D.N.Y. May 3, 2018), appeal dismissed sub nom. 2019 WL 2253169 (2d Cir. Mar. 18, 2019)

(citing 7 U.S.C. § 13a-1(b)).  A permanent injunction "is appropriate where there is a likelihood

that unless enjoined the violations will continue."  CFTC v. American Bd. of Trade, Inc., 803

F.2d 1242, 1250-51 (2d Cir. 1986).  "Issues that a court must consider in determining whether to

grant permanent injunctive relief include the 'egregiousness of the defendant's actions; the

isolated, recurrent, or systematic nature of the violations; the degree of scienter involved; the

Defendants' recognition of the wrongfulness of the conduct; and the likelihood that the

Defendants' customary business activities will present opportunities for future violations.'"

CFTC v. Wright, No. 17 CV 4722-LTS-DCF, 2018 WL 6437055, at *4 (S.D.N.Y. Dec. 7, 2018)

(quoting CFTC v. McDonnell, No. 18 CV 361, 2018 WL 4090784, at *52 (E.D.N.Y. Aug. 28,

2018)).  "Courts need not enjoin only identical future violations; they may extend to restrictions

on . . . activity generally, if a court finds that defendants are not likely to 'make good faith efforts

to comply with restrictions,' more broadly, in the future."  CFTC v. Creagh, No. 15-CV-6140

(JPO), 2017 WL 1929624, at *2 (S.D.N.Y. May 10, 2017) (quoting CFTC v. Wilshire Inv.

Mgmt. Corp., 531 F.3d 1339, 1346-47 (11th Cir. 2008)).

  **B.**  **Parties' Positions**

   The CFTC argues that the requested injunctive relief is justified because

Defendants' conduct was "particularly egregious" and took place over "a five year period of

time." (Pltf. Br. (Dkt. No. 93) at 14)  The CFTC contends that it "is beyond any doubt that

Defendants will continue to violate the recordkeeping and supervision requirements" and that

Moore will continue to make false statements "unless [Defendants] are enjoined from doing so

and their registrations are revoked." (Id.)  According to the CFTC, Defendants' failure to

comply with NFA rules – including rules regarding their supervisory obligations – "demonstrates

the likelihood of future violations." (Id. at 14-15)  The CFTC further argues that Defendants'

failure to acknowledge the wrongful nature of their conduct – and their attempt to disown their

prior admissions in their motion for reconsideration – shows the need for injunctive relief. (Id. at

15)

According to the CFTC, eFloorTrade's compliance with the law can be ensured

only if Moore's registration is revoked and a futures commission merchant agrees to act as a

guarantor. (Id.)  "[B]ecause a guarantor [futures commission merchant] will be jointly and

severally liable for [eFloorTrade's] acts or omissions[,] [the guarantor] will have the motivation

to ensure [eFloorTrade's] compliance with the [CFTC's] rules and regulations." (Id. (citing

CFTC Form 1-FR-IB (Part B) (stating that a registered futures commission merchant is "jointly

and severally liable for all obligations of the introducing broker under the Commodity Exchange

Act. . . . [and] regulations")))

Defendants argue that Principal and Registration Bans are not warranted here

because Defendants "have not been the subject of a CFTC enforcement [action] prior to this

complaint and, for the last five years, [eFloorTrade] passed annual audits and continues to

operate." (Def. Opp. (Dkt. No. 99) at 19)  Defendants attribute the violations not to "a pattern of

wrongdoing" but rather to the "practical challenges of a small firm" and to the missteps of their

now deceased attorney. (Id. at 9, 20)  They maintain that their "long history with clients . . . is a

testament to a business run with integrity and the ability to deliver a reliable service." (Id. at 20) Defendants further argue that there is "no evidence" that (1) their actions caused "significant injury to the public or the markets" or resulted in "client losses"; or (2) they profited or sought to profit from their misconduct. (Id. at 20-22) They argue that a permanent Registration Ban would require Moore to sell his equity in eFloorTrade to eliminate his role as a principal, and that no monetary penalty should be imposed, because no buyer would purchase eFloorTrade if it is "saddled with liability [that it] is unable to pay." (Id. at 22) Finally, Defendants cite various "collateral consequences" that "may" result from a permanent injunction, such as being disqualified as "a member of a self-regulatory organization." (Id. at 22-23)

## C.    Analysis

After considering the evidence and weighing the relevant factors, the Court concludes that it is appropriate to permanently enjoin Defendants from engaging in the conduct for which this Court found Defendants liable in its summary judgment decision. As the Court has previously stated, Defendants' conduct constitutes "a complete and utter failure to satisfy statutory and regulatory obligations." (Order (Dkt. No. 63) at 14) And although Defendants stipulated to supervisory and recordkeeping violations (Stipulation (Dkt. No. 51-20)), they later attempted to back away from those admissions. (Order (Dkt. No. 89)) And even now Defendants refuse to take responsibility for their actions, blaming their misconduct on the size of the firm and missteps of their deceased lawyer. (Def. Opp. (Dkt. No. 99) at 9, 20) As for Moore, he does not admit to testifying falsely – despite overwhelming evidence to the contrary – and he downplays the significance of providing false information to federal regulators. (Id. at 7 ("Even if Moore made false statements, the impact was irrelevant.")) Given these circumstances, there is a likelihood that Defendants will repeat their misconduct. See Creagh, 2017 WL

1929624, at *2 (imposing permanent injunction because defendant's "false statements . . . coupled with his erroneous understanding about his legal obligations . . . presents a likelihood of violating trading regulations in the future"); <u>CFTC v. U.S. Metals Depository Co.</u>, 468 F. Supp. 1149, 1163 (S.D.N.Y. 1979) (Weinfeld, J.) (imposing permanent injunction in part because defendants "evince no recognition that they have committed any misdeed").

As to the requested Principal and Registration Bans, the Court concludes that permanent bans are not warranted. Although Defendants' misconduct was long running and serious, there is no evidence that Defendants' customers sustained losses as a result of Defendants' actions, or that Defendants sought to profit at their clients' expense. Defendants have also not been the subject of other CFTC enforcement actions. Although in 2014 the NFA imposed fines on Defendants based on inadequate supervision and other infractions, 2014 falls within the Relevant Period of the instant case. As to the NFA's November 2016 examination report finding recordkeeping and supervision deficiencies (<u>see</u> Pltf. Reply (Dkt. No. 96) at 8), the NFA never disciplined Defendants for this conduct, which suggests that it was not regarded by the NFA as serious.

Having considered the evidence and weighed the relevant factors, the Court concludes that Principal and Registration Bans are appropriate, but that permanent bans would be excessive. The Court will impose the bans sought by the CFTC, but only for a five-year period. <u>See</u> <u>Reddy v. CFTC</u>, 191 F.3d 109, 126-27 (2d Cir. 1999) (upholding five-year ban where petitioner "knowingly assisted others in illegal transactions," but "did not profit from the unlawful transactions," and "had no prior or subsequent violations of the Act"); <u>cf.</u> <u>CFTC v.</u> <u>Stauffer</u>, No. 1:15-CV-201, 2018 WL 2197732, at *1 (W.D. Mich. Mar. 30, 2018) (imposing

15-year ban for $1.8 million "fraudulent [scheme], which occurred over approximately five years" and "involved more than a dozen victims").

The cases cited by the CFTC are, for the most part, not to the contrary. The lifetime bans imposed in those cases were based on misconduct far more egregious than that present here. (Pltf. Br. (Dkt. No. 92) at 12) For example, in CFTC v. Rolando, 589 F. Supp. 2d 159, 163 (D. Conn. 2008), the defendant "operated a fraudulent investment scheme in which he solicited millions of dollars from hundreds of customers residing in the United States and around the world." As part of this scheme, he engaged in unauthorized trading and sent customers falsified account statements that artificially inflated the value of their holdings by $17 million to cover up losses. Rolando, 589 F. Supp. 2d at 165. In CFTC v. Kelly, 736 F. Supp. 2d 801, 802 (S.D.N.Y. 2010), the defendant – who received a lifetime trading ban – was sentenced to 33 months' imprisonment for participating in a fraudulent scheme that involved stealing confidential information from his employer and trading on the information more than one hundred times. The scheme generated $4.7 million in profits over two years. Kelly, 736 F. Supp. 2d at 802.

The imposition of Principal and Registration Bans must reflect differences in culpability. A defendant whose recordkeeping deficiencies did not result in demonstrable harm to clients cannot rationally be treated the same as someone who stole millions from customers.

Under the circumstances here, a five-year ban is sufficient.

## II.   **MONETARY PENALTIES**

### A.   **Legal Standard**

The Commodities Exchange Act authorizes civil monetary penalties "in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for

each violation." 7 U.S.C.A. § 13a-1. The $100,000 amount "is periodically adjusted for inflation per the Inflation Adjustment Act of 1990." CFTC v. Park, No. 16-CV-4120 (VEC), 2018 WL 6324810, at *4 (S.D.N.Y. Dec. 3, 2018) (citing 17 C.F.R. § 143.8 (2018)). For purposes of the Relevant Period, the maximum fine is $140,000. (Id. (citing 17 C.F.R. § 143.8 (2018)).

   The Second Circuit has instructed that monetary sanctions imposed pursuant to the Act must be designed "to further [its] remedial policies and to deter others in the industry from committing similar violations." Reddy, 191 F.3d at 123 (internal quotation marks omitted). "The penalty must be 'rationally related to the offense' and should take into consideration 'the general seriousness of the violation as well as any particular mitigating or aggravating circumstances that exist.'" Park, 2018 WL 6324810, at *4 (quoting CFTC v. Fan Wang, 261 F. Supp. 3d 383, 388 (S.D.N.Y. 2017)); see also McCrudden, 2018 WL 1175154, at *4 (same). "As numerous courts have recognized, one of those mitigating factors is the defendant's ability to pay." Park, 2018 WL 6324810, at *4 (citing Fan Wang, 261 F. Supp. 3d at 388; CFTC v. Paragon FX Enterprises, LLC, No. 11-CV-7740, 2015 WL 2250390, at *5 (S.D.N.Y. Feb. 2, 2015)).

  **B.**  **Parties' Positions**

   The CFTC seeks a civil monetary penalty of $1,120,000 ($140,000 x 8 violations) against the two Defendants, and a $420,000 penalty against Moore ($140,000 x 3 violations). The proposed $1,120,000 penalty is premised on the notion that Defendants committed five recordkeeping violations and three supervisory violations. As to the recordkeeping violations, the CFTC alleges that eFloorTrade did not (1) maintain trading instructions or signals; (2) maintain a written record of all customer orders; (3) prepare, upon receipt, a written record of

eFloorTrade's customers' orders; (4) produce to the CFTC trading instructions or signals; and (5) produce to the CFTC a written record of customer orders.  (Pltf. Br. (Dkt. No. 93) at 18 (citing Order (Dkt. No. 63) at 1-3, 6-9, 13, 14))  As to the supervisory failures, the CFTC asserts that eFloorTrade and Moore did not design, implement, maintain, and enforce an adequate program of supervision to (1) ensure compliance with eFloorTrade's recordkeeping obligations; (2) ensure compliance with eFloorTrade's own internal policies and procedures; and (3) handle routine margin calls.[9]  (Id. at 14-15)

As for the proposed $420,000 civil monetary penalty for Moore, the CFTC argues that his September 18, 2015 testimony includes three materially false statements regarding the non-existent spreadsheet.  (Pltf. Br. (Dkt. No. 93) at 18 (citing Order (Dkt. No. 63) at 9, 10, 16, 17))  Although the CFTC does not identify the three false statements, they appear to be Moore's testimony that (1) eFloorTrade maintains a spreadsheet listing the trading instructions or signals received from TPTSs; (2) he and Chris Moore manually input trading instructions received on behalf of TPTS customers into that spreadsheet each day; and (3) he and Chris Moore use the spreadsheet on a daily basis to compare trades that were executed for eFloorTrade customers with the trading instructions or signals received by eFloorTrade on behalf of those customers.  (Order (Dkt. No. 63) at 16)

The CFTC seeks the maximum statutory penalty of $140,000 per statement, arguing that "the ability to examine the books and records of a registrant is one of the [CFTC's] principal means of determining compliance with the Act and . . . Regulations[,] and having those records readily searchable and available [is] indispensable to the [CFTC's] ability to conduct

---

[9]  These eight recordkeeping and supervisory violations closely mirror the parties' Stipulation (Dkt. No. 51-20) concerning these matters.

surveillance inquiries and investigations in an efficient and effective manner for the protection of customers and ensuring market integrity." (Pltf. Br. (Dkt. No. 93) at 19) Where a registrant does not "keep and prepare records pertaining to customer orders," "there is an insufficient audit trail to ensure that customer orders are properly entered and/or executed." (Id. at 21) The CFTC further argues that "Moore's attempt to conceal Defendants' violative conduct by making false statements to the [CFTC] regarding the very records in issue is very telling of his nefarious state of mind." (Id. at 20) Finally, the CFTC argues that Defendants failed to take responsibility for their misconduct, noting Moore's attempt to disavow a stipulation he personally signed. (Id.)

Defendants argue that the penalties the CFTC seeks are "grossly disproportionate and unjustified," and are inconsistent with penalties that courts and the CFTC have approved in comparable cases. (Def. Opp. (Dkt. No. 99) at 23-24) Defendants reiterate that there is "no claim[] [here] that [they] knowingly defrauded clients or misappropriated client funds," or sought to profit from their misconduct, and that these circumstances "distinguish[] Defendants' conduct from others where the maximum penalty is applied." (Id. at 26, 28) Defendants also blame their deceased former lawyer for "reporting and disclosure failures." (Id. at 27) Finally, Defendants represent that they cannot pay the monetary penalty that the CFTC seeks, asserting that Moore's gross salary for the entire 2010 to 2015 time period was only $288,000, and that eFloorTrade's net income over this same period was $35,562. (Def. Opp. (Dkt. No. 99) at 18 n.43) Defendants assert that the CFTC's proposed monetary penalty would drive Moore into bankruptcy. (Id.)

C. **Analysis**

Defendants' supervisory and recordkeeping violations reflect a blatant disregard for their statutory and regulatory obligations, and Moore's September 18, 2015 testimony about a

non-existent spreadsheet reflects a blatant disregard for the truth.  (Order (Dkt. No. 63) at 14, 16)

As discussed above, Moore's attempt to (1) disavow a stipulation that he signed; and (2) deflect

blame onto his deceased lawyer for Moore's own misconduct suggests that Defendants have not

fully accepted responsibility for their conduct.  (Order (Dkt. No. 86))  Nevertheless, the Court

concludes that the $1.54 million in penalties sought by the CFTC are excessive.  See Creagh,

2017 WL 1929624, at *2 ("Though the Court takes seriously the gravity of [defendant's] offense

and the importance of maintaining the integrity of the markets through honest and complete

disclosure – and accordingly imposes both injunctive and monetary relief – the Court, in

exercising its discretion to impose a penalty rationally related to the offense, concludes that a

penalty near the maximum allowable amount for each of [defendant's] four counts would be

excessive.").

     As noted above, Defendants did not defraud or otherwise injure their customers,

and there is no evidence that Defendants profited (or sought to profit) from their misconduct.

These factors distinguish this case from others cited by the CFTC.  See Pltf. Br. (Dkt. No. 93) at

17, 20; see also CFTC v. Angus Jackson, Inc., No. 12-60450-CIV, 2013 WL 320185, at *16

(S.D. Fla. Jan. 28, 2013) (imposing $1.91 monetary penalty where illicit gain from misconduct

was $955,000); In the Matter of:  Constantine Mitsopoulos, 2000 WL 1230262, at *2 (CFTC

Aug. 31, 2000) (imposing $1 million civil penalty in case involving "a fraudulent trade allocation

scheme in which . . . profitable trades [were allocated] to certain customer accounts and . . .

losing trades [were allocated to] other customer accounts").[10]  Moreover, it appears unlikely that

_____

[10]  The default judgment cases cited by the CFTC (see Pltf. Br. (Dkt. No. 93) at 17 (citing CFTC
v. iFinix Futures, Inc., No. CV-12-4843 LDW, 2013 WL 5798546, at *9 (E.D.N.Y. Sept. 16,
2013); CFTC v. Yorkshire Group, Inc., No. 13-CV-5323, 2016 WL 8256380, at *5 (E.D.N.Y.
Aug. 19, 2016)) are entitled to little weight, because the amounts sought were not litigated.  See
Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (on a motion for a default judgment, "a

Defendants could pay the $1.54 million sanction sought by the CFTC, which – in any event – appears disproportionate to the severity of the Defendants' misconduct.[11]

Having considered the aggravating and mitigating factors here, the Court will impose penalties of $10,000 each for the five recordkeeping violations and three supervisory violations – for a total penalty of $80,000.  See McCrudden, 2018 WL 1175154, at *7 (imposing total penalty of $60,000 where CFTC sought the statutory maximum of $390,000 for three violations ($130,000 x 3) after taking into account the "gravity of the violations," the "[defendant's] financial circumstances," and the lack of evidence that funds "were mishandled or misappropriated").  In arriving at a total penalty of $80,000 for the recordkeeping and supervisory violations, the Court acknowledges that the CFTC has presented this misconduct as eight separate violations, even though certain violations could have reasonably been grouped together.  Given Moore's control over eFloorTrade, joint and several liability for the $80,000 penalty is appropriate.  See, e.g., CFTC v. Yorkshire Grp., Inc., No. 13-CV-5323 (AMD) (ST), 2016 WL 8256380, at *5 (E.D.N.Y. Aug. 19, 2016), report and recommendation adopted, 2016 WL 5942310 (E.D.N.Y. Oct. 12, 2016) ("Joint and several liability is appropriate here.  The Act explicitly provides that '[a]ny person who, directly or indirectly, controls any person who has violated any provision of this chapter . . . may be held liable for such violation in any action

---

court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor").

[11] Although the CFTC argues that Defendants' ability to pay should not be considered (see Pltf. Reply (Dkt. No. 96) at 13-14), courts in this Circuit routinely consider such evidence when assessing a civil penalty.  See, e.g., Park, 2018 WL 6324810, at *4 ("As numerous courts have recognized, one of [the relevant] mitigating factors is the defendant's ability to pay.") (citing CFTC v. Fan Wang, 261 F. Supp. 3d 383, 388 (S.D.N.Y. 2017); CFTC v. Paragon FX Enterprises, LLC, No. 11-CV-7740, 2015 WL 2250390, at *5 (S.D.N.Y. Feb. 2, 2015)); see also McCrudden, 2018 WL 1175154, at *4 ("A defendant's ability to pay is . . . a relevant consideration.").

brought by the [CFTC] to the same extent as such controlled person.'") (quoting 7 U.S.C. § 13c(b)).

As to the three false statement charges against Moore, the Court will impose a total civil monetary penalty of $140,000. This penalty reflects the serious nature of Moore's false testimony, but also addresses Moore's ability to pay and the fact that the three false statement charges concern a single subject – the non-existent spreadsheet – and therefore could reasonably be construed as a single violation. See Creagh, 2017 WL 1929624, at *2 (imposing $125,000 civil monetary penalty where CFTC sought $125,000 penalty on each of four false statements counts, for a total proposed penalty of $500,000).

## CONCLUSION

I. **INJUNCTIVE RELIEF**

For the reasons stated above, the CFTC's request for injunctive relief is granted to the extent that:

A. Defendants Moore and eFloorTrade are permanently restrained, enjoined and prohibited from directly or indirectly:

1. Failing to keep and produce for inspection records of eFloorTrade's pretrade communications and all commodity interest and related records, in violation of Section 4g(a) of the Act, 7 U.S.C. § 6g(a), and Regulations 1.31(a) and (d), 1.35(a)(3) and (b)(1), 17 C.F.R. §§ 1.31(a), (d), 1.35(a)(3), (b)(1) (2018);

2. Failing to prepare, immediately upon receipt, a written record of a customer order including account identification and order number, and reflecting the date and time, to the nearest minute, the order is received, in violation of Section 4g(a) of the Act, 7 U.S.C. § 6g(a), and Regulations 1.35(a)(3) and (b)(1), 17 C.F.R. §§ 1.35(a)(3), (b)(1) (2018); and

3. Failing to diligently supervise the handling of commodity interest accounts and other activities of eFloorTrade's partners, officers,

employees and agents in violation of Regulation 166.3, 17 C.F.R. § 166.3 (2018).

B.      Defendant Moore is permanently restrained from directly or indirectly making false or misleading statements of material fact to the Commission in violation of Section 6(c)(2) of the Act, 7 U.S.C. § 9(2).

C.      Unless eFloorTrade is a party, at all times, to a guarantee agreement with a registered futures commission merchant ("FCM"), pursuant to Regulations 1.10(a)(4) and (j), 17 C.F.R. § 1.10(a)(4), (j) (2018), whereby the registered FCM acting as guarantor is jointly and severally liable for all obligations of eFloorTrade under the Act and Regulations, Defendant eFloorTrade is restrained, enjoined and prohibited from directly or indirectly:

   1.      Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018)); and/or

   2.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

   3.      These restrictions shall remain in place for five years from the date that this Opinion & Order is entered on the docket.

D.      Defendant Moore is also restrained, enjoined and prohibited from directly or indirectly:

   1.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and/or

   2.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted

from registration or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

3.    These restrictions shall remain in place for five years from the date that this Opinion & Order is entered on the docket.

## II.    CIVIL MONETARY PENALTY

Defendants shall pay, jointly and severally, a civil monetary penalty in the amount of $80,000, and Moore shall pay, individually, an additional civil monetary penalty of $140,000 ("CMP Obligation").  If the CMP Obligation is not paid immediately, post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Opinion & Order, and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Opinion & Order pursuant to 28 U.S.C. § 1961.

Defendants shall pay their CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the CFTC and sent to the address below:

MMAC/ESC/AMK326
Commodity Futures Trading Commission
Division of Enforcement
6500 S. MacArthur Blvd.
HQ Room 181
Oklahoma City, OK 73169

If payment by electronic funds transfer is chosen, Defendants shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Marie Thorne or her successor can be reached at the following telephone numbers and email address:  (405) 954-6569 office telephone; (405) 954-1620 office fax; 9-AMC-AR-CFTC@faa.gov.  Payment of the CMP Obligation is to be accompanied by a cover letter that identifies Defendants and the name and docket number of this proceeding.

Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

Acceptance by the CFTC of any partial payment of Defendants' CMP Obligation shall not be deemed a waiver of Defendants' obligation to make further payments pursuant to this Opinion & Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

*     *     *     *

The Clerk of Court is directed to terminate the motion (Dkt. No. 92), enter judgment, and close this case.

Dated: New York, New York
April 3, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge