UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. COMMODITY FUTURES TRADING
COMMISSION,

                  Plaintiff,

            v.

EFLOORTRADE, LLC AND JOHN A.
MOORE,

                Defendants.

Case No. 16-cv-7544 (PGG)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR A
## STAY OF JUDGMENT PENDING APPEAL

BRAD S. MAISTROW, P.C.
Attorneys for Defendants

48 Wall Street, 11th Floor
c/o Meyers, Meyers & Tonachio
New York, NY 10005
Tel: 917.817.8007

i

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT..................................................................................................................... 2

I.      DEFENDANTS WILL SUFFER IRREPARABLE INJURY ABSENT A STAY PENDING
APPEAL. .......................................................................................................................... 2

II.      THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS OF THE DISPUTE
AND THE BALANCE OF THE HARDSHIPS STRONGLY FAVORS
DEFENDANTS..................................................................................................................6

      A. Defendants' Serious Questions Going to the Merits.........................................................7
      B. The Balance of the Hardships Tips Decidedly in Defendants' Favor............................. 12

III. ALTERNATIVELY, THE COURT SHOULD GRANT A TEMPORARY
ADMINISTRATIVE STAY............................................................................................... 14

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Constitutional Provisions**

U.S. Const. Amend. XIV ............................................................................................................ 5


**Cases**

*Anderson v. Cryovac, Inc*., 862 F.2d 910 (1st Cir. 1988)................................................... 12

*Blum v. Merrill Lynch & Co.*, No. 15-cv-01636, 2015 WL 6685357
   (S.D.N.Y. Oct. 22, 2015) ................................................................................................. 9,17

*Boyd v. Ford Motor Co.,* 948 F.2d 283 (6th Cir. 1991) ...................................................... 12

*Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ........................ 4

*Carter* v. *Kubler*, 320 U.S. 243 (1943)................................................................................. 8

*CFTC v. Wilson* 2016 WL 72209056 (S.D.N.Y. Sept. 30, 2016). ...................................... 6

*Chamber of Commerce v. SEC*, 412 F.3d 133 (D.C. Cir. 2005) ......................................... 6

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30
   (2d. Cir. 2010).................................................................................................................. 8,9

*Dexter 345 Inc. v. Cuomo*, 663 F.3d 59 (2d Cir. 2011)........................................................ 4

*Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988*)*........................................................ 8

*Fed. Prescription Serv. Inc. v. Am. Pharm. Ass'n,* 636 F.2d 755 *(D.C. Cir. 1980)*........................ 8

*Fontenot v. Upjohn Co*., 780 F.2d 1190 (5th Cir. 1986) ...................................................... 7

*Front Carriers Ltd. v. Transfield ER Cape Ltd.*, No. 07-cv-6333, 2010 WL 571967
   (S.D.N.Y. Feb. 15, 2010)................................................................................................. 17

*Goldberg v. Kelly*, 397 U.S. 254 (1970)............................................................................... 7

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007) ...................... 4

*Greene* v. *McElroy*, 360 U.S. 474 (1959).............................................................................. 12

*HC Trading Int'l Inc. v. Crossbow Cement, SA*, No. 08-cv-11237, 2009 WL 4931341
   (S.D.N.Y. Dec. 21, 2009) ................................................................................................ 18

*In re A2P SMS Antitrust Litig.*, No. 12-cv-02656, 2014 WL 4247744
   (S.D.N.Y. Aug. 27, 2014) ................................................................................................. 9

*In re Adelphia Comms. Corp.*, 361 B.R. 337 (S.D.N.Y. 2007)........................................... 5,7

*In re Nassau County Strip Search Cases,* 783 F.3d 414 (2d Cir. 2015*)*................................... 8, 14

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167 (2d Cir. 2007) ......................... 2

*Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*,
   864 F.2d 927 (1st Cir. 1988)............................................................................................ 12

*LG Elecs., Inc. v. Wi-LAN USA, Inc.*, No. 13-cv-2237, 2015 WL 4578537
   (S.D.N.Y. July 29, 2015) ................................................................................................. 3,9

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ......................................................................... 11

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153
   (6th Cir. 1991).................................................................................................................. 3,8

*Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) ........................................................ 3,8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)..................... 6

*Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) ....................................................... 11

*Powell v. Alabama*, 287 U.S. 45 (1932) ............................................................................... 7

*SEC v. Capital Sols. Monthly Income Fund, LP* 818 F.3d 346 (8th Cir. 2016) ................. 11

*SEC v. Life Partners Holdings*, Inc., No. 14-51353 (5th Cir. 2017). ................................. 12

*SEC v. Lipson* 278 F.3d 656 (7th Cir. 2002). ............................................................................. 11
*Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395 (S.D.N.Y. 2011) ......................................... 2
*Thapa v. Gonzales*, 460 F.3d 323 (2d Cir. 2006) ............................................................................ 2
*Tolan v. Cotton* 134 S.Ct. 1861 (2014*)* .......................................................................................... 6
*Trans World Airlines, Inc., v. Hughes,* 515 F.2d 173 (2d Cir. 1975*)* ............................................ 8
*White v. Ragen*, 324 U.S. 760 (1945) .............................................................................................. 7

**Statutes**
5 U.S.C. § 706(2).............................................................................................................................. 6
7 U.S.C. § 1 ...................................................................................................................................... 4
7 U.S.C. § 4g(a)................................................................................................................................ 3
7 U.S.C. § 6c(a) .............................................................................................................................. 11
7 U.S.C. § 9(2).................................................................................................................................. 3

**Other Authorities**
U.S. Courts, U.S. Courts of Appeals – Federal Court Management Statistics – Summary – 12-
    Month Period Ending June 30, 2015 .......................................................................................... 16

**Rules**
Fed. R. Civ. P. 56(a) ........................................................................................................................ 6

**Regulations**
17 C.F.R. pt. 11 app. A..................................................................................................................... 4
17 C.F.R. §1.31................................................................................................................................ 3,6
17 C.F.R. §1.35................................................................................................................................ 3,6
17 C.F.R. § 10.42............................................................................................................................ 10
17 C.F.R. § 11.7(b).......................................................................................................................... 9
17 C.F.R. § 166.3.............................................................................................................................. 3

**INTRODUCTION**

Defendant John A. Moore ("Moore") and Defendant eFloorTrade, LLC ("EFT"), a

small introducing broker ("IB") registered with the U.S. Commodities Futures Trading

Commission ("CFTC"), submit this memorandum of law in support of their Motion for a Stay

Pending Appeal of an adverse judgment, entered in connection with a civil enforcement action

brought against Defendants by CFTC.  Whether the Court should issue a stay pending appeal

turns on the balance of four "'well known'" factors:

> "(1) whether the stay applicant has made a strong showing that he
> is likely to succeed on the merits; (2) whether the applicant will be
> irreparably injured absent a stay; (3) whether issuance of the stay
> will substantially injure the other parties interested in the
> proceeding; and (4) where the public interest lies."

*Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 418 (S.D.N.Y. 2011) (quoting *In re*

*World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)).

Generally, "[t]he degree to which a factor must be present varies with the strength of the

others," such that "'more of one [factor] excuses less of the other.'" *Thapa v. Gonzales*, 460

F.3d 323, 334 (2d Cir. 2006). Moreover, "[t]he first two [factors] – likely success on the merits

and irreparable injury – are the 'most critical.'" *Id.* And, as between those two critical factors,

"'[t]he probability of success that must be demonstrated is inversely proportional to the amount

of irreparable injury [the appellant] will suffer absent the stay.'" *Mohammed v. Reno*, 309 F.3d

95, 101 (2d Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,

945 F.2d 150, 153 (6th Cir. 1991)); *accord LG Elecs., Inc. v. Wi-LAN USA, Inc.*, No. 13-cv-

2237, 2015 WL 4578537, at *1 (S.D.N.Y. July 29, 2015).

For the reasons stated herein, Defendants respectfully submit that the balance of these

factors strongly favors a stay pending appeal.

## BACKGROUND

CFTC commenced a civil enforcement action against Moore and EFT, alleging that

between October 2010 and October 2015 (the "Relevant Period"), Defendants (1) made false or

misleading statements to the CFTC, in violation of 7 U.S.C. § 9(2); (2) failed to keep and produce

required books and records, in violation of 7 U.S.C. § 4g(a), 17 C.F.R. §§ 1.31(a)(1) and (2), and

17 C.F.R. §§ 1.35(a)(1) and (3); (3) failed to make and/or prepare required records, in violation of

7 U.S.C. § 4g(a) and 17 C.F.R. § 1.35; and (4) failed to supervise, in violation of 17 C.F.R. § 166.3.

(Cmplt. (Dkt. No. 1)).

The Court granted the CFTC summary judgment as to liability. (Order (Dkt. No. 63))

Thereafter, CFTC moved for a permanent injunction and civil monetary penalties. (Pltf. Br. (Dkt.

No. 93)) The Court granted CFTC's motion for injunctive relief to the extent that Defendants will

be (1) permanently enjoined from committing the conduct for which they were found liable; and

(2) enjoined from registering with the CFTC or acting as a principal of any person registered with

the CFTC for five years. Additionally, the Court imposed an $80,000 civil monetary penalty

("CMP") on Defendants for the supervisory and recordkeeping violations (Counts Two through

Four) and a $140,000 CMP on Moore for making false statements to the CFTC (Count One). Order

(Dkt. No. 101)) Judgement was entered on April 7, 2020. (Judgment  (Dkt. No. 102))

## ARGUMENT

### I.    Defendants Will Suffer Irreparable Injury Absent a Stay Pending Appeal.

"Irreparable harm exists 'where, but for the grant of equitable relief, there is a substantial

chance that upon final resolution of the action the parties cannot be returned to the positions they

previously occupied.'" *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d

Cir. 1999).  Put another way, to justify a stay pending appeal, the irreparable harm must be

2

"actual and imminent," as opposed to "speculative," *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63

(2d Cir. 2011), and the harm must be one that "cannot be remedied" by a favorable ruling from

the appellate court, *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir.

2007) (per curiam).

If professional licenses are revoked and sanctions are imposed *before* the Second Circuit

has an opportunity to hear Defendants' appeal, Defendants will  instantly be put out of business and

their right to appeal will lose all constitutional, legal, and practical value.[1]  Since entry of the

judgment on April 7, 2020, which included injunctive relief, Defendants have refrained from

engaging in any business activity requiring registration. As a result, Defendants have necessarily

lost revenue; it has no client accounts on its books, there are no clearing arrangements and it has

not executed trades for clients or solicited business during this period. Defendants have already

suffered, and absent a stay, nothing could return Defendants to the positions they previously

occupied, even if Defendants prevail on their appeal.  Consequently, this factor strongly favors

staying the injunctions and civil monetary penalties pending appeal.

Notwithstanding Defendants' curtailed business since the entry of the judgment, they

continue in good faith to comply, maintain records and respond to requests for information from

the National Futures Administration (NFA) and others about future operations. For example, the

$80,000 CMP against EFT was booked as a contingent liability and negatively impacted EFT's net

capital requirement. In order to maintain the viability of EFT during the appeal, albeit severely

limited given the injunctive provisions of the judgment and its impact on Defendants' ability to

earn income, Moore obtained funds to maintain net capital.  Moore – despite the injunctive relief

set forth in the judgment – informed NFA of the deposit of funds to maintain net capital and of

---

[1] See, e.g., *In re Adelphia*, 361 B.R. at 347 and n.40 (recognizing that "risk of mootness" of appellate issue constitutes "irreparable harm").

Defendants' intent to file an appeal and seek a stay. It is clear that the harm to Defendants without a stay pending appeal is actual and imminent.[2]

Defendants seek an appeal based on constitutional principles to review a civil enforcement decision.  The imposition of a permanent injunction based on a ruling on liability and sanctions – without a hearing – deprived Defendants of due process, resulting in the loss of a professional license, damage to reputation and harm to Defendants' livelihood in general.  An immediate stay is necessary to avoid irreparable injury.

An arbitrary and capricious enforcement violates the basic norms of due process.  CFTC engaged in an enforcement which violated the Administrative Procedures Act (APA)[3], Commodity Exchange Act (Act)[4] and the U.S. Constitution.[5] It failed to provide adequate notice including a *Wells Notice*.[6]  With adequate notice, the alleged deficiencies could have been corrected before charges were filed. For example, during the investigation, CFTC requested records extending over a five-year period (2010-2015). After Defendants objected to this voluminous request, CFTC approved a more limited production (2013 to 2015), and Defendants produced records for this shorter period. However, CFTC charged a violation and the Court imposed liability and sanctions for the failure to keep and produce records over the five-year period.

Moreover, harm and error were compounded by CFTC's "'earth is flat' style conviction." *CFTC v. Wilson* 2016 WL 72209056, at *1, *15 (S.D.N.Y. Sept. 30, 2016).  CFTC excluded evidence rebutting the Court's presumption that Defendants recordkeeping was "a complete and

---

[2] The loss of income and employment and the current Covid-19 conditions further exacerbates injury.  Defendants may also be barred from any economic injury relief and it has not sought any loans or grants from the CARES Act as a result.

[3] 5 U.S.C. § 556(d)**.**

[4] 7 U.S.C. § 1.

[5] U.S. Const. Amend. XIV, § 1.

[6] 17 C.F.R. pt. 11 app. A., give the Division authority to inform persons who may be named in a proposed enforcement action the nature of the allegations against them before the action is filed.

utter failure." (Dkt. No. 101 Decision at 13).  Under the APA, the Court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). It also must ensure CFTC "has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Chamber of Commerce v. SEC*, 412 F.3d 133, 140 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The decision to resolve factual issues through summary judgment furthered CFTC's capricious acts.[7]  Defendants raised material issues in dispute on all four counts. However, like in *Tolan v. Cotton*, the court erred by resolving disputed issues in favor of the moving party.[8]  This inoculated CFTC from having to prove liability on any charge.

Moreover, Defendants were denied due process when their prior counsel defrauded the Court and made misrepresentations to Defendants that they were "ordered" by the Court to sign a stipulation over objections. Constitutional principles and a commitment to the adversary system requires competent performance by defense counsel. "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Powell v. Alabama*, 287 U.S. 45, 669 (1932).  A lawyer's ability to marshal and present facts and law to support a

---

[7] Fed. R. Civ. P. 56(a).
[8] 572 U.S. 650 (2014).

client's cause is critical to this process.[9]  To characterize Defendants' prior attorney's gross

misconduct as a "misstep" denied the Defendants an opportunity to defend their credibility.[10]

A determination on these issues is fundamental to our constitutional system. So too is

Defendants' right to appellate review. Cf. *In re Adelphia Comms. Corp.*, 361 B.R. 337, 348

(S.D.N.Y. 2007) ("[L]oss of appellate rights is a quintessential form of prejudice."). Indeed,

judicial solicitude underlies numerous decisions approving immediate review and without requiring

the posting of a bond or other security.[11]

As noted above, absent a stay pending appeal, Defendants will be instantly put out of

business and, therefore, the harm to Defendants would be actual and imminent and nothing

could return Defendants to the positions they previously occupied.  This factor strongly favors

staying the Order pending appeal.

## II.     There are Serious Questions Going to the Merits of the Dispute and the Balance of the Hardships Strongly Favors Defendants.

Because Defendants will suffer irreparable and severe harm if a stay pending appeal is

not granted, they need not demonstrate a high likelihood of success on the merits to justify a

stay. See *Mohammed*, 309 F.3d at 101 ("'The probability of success that must be demonstrated

is inversely proportional to the amount of irreparable injury [the appellant] will suffer absent the

stay.'" (quoting *Mich. Coal.*, 945 F.2d at 153)); see also *Citigroup Global Markets, Inc. v. VCG*

---

[9] See, e.g., *White v. Ragen*, 324 U.S. 760 (1945); *Powell v. Alabama*, 287 U.S. 45 (1932); Cf. *Goldberg v. Kelly*, 397 U.S. 254, 270-71 (1970) (right to be heard comprehends right to be heard by retained counsel).

[10] See, e.g., *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1196 (5th Cir. 1986) ("To permit the pleadings themselves to carry a case to trial when they rest only on the invention of counsel would permit ultimate circumvention of Federal Rule of Civil Procedure 11.")

[11] See, e.g., *In re Nassau County Strip Search Cases, 783 F.3d 414 (2d Cir. 2015) (per curiam); Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988*); Fed. Prescription Serv. Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 757-58 (D.C. Cir. 1980)); Trans World Airlines, Inc., v. Hughes,* 515 F.2d 173, 176 (2d Cir. 1975*).*

*Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d. Cir. 2010) (movant need not show

he "is 'more likely than not' to succeed on the merits" to justify stay).

Indeed, because Defendants are asking the Court to stay its *own* decision, they need

only satisfy the less rigorous "serious questions" standard. See, e.g., *Blum v. Merrill Lynch &*

*Co.*, No. 15-cv-01636, 2015 WL 6685357, at *1 (S.D.N.Y. Oct. 22, 2015); *LG Elecs.*, 2015

WL 4578537, at *1; *In re A2P SMS Antitrust Litig.*, No. 12-cv-02656, 2014 WL 4247744, at

*2 (S.D.N.Y. Aug. 27, 2014) ("Asking the district court to then find that the movant is likely

to succeed on the merits on appeal would require the district court to find that its own decision

is likely to be reversed – a standard that for practical purposes is rarely going to be

satisfied."); see also *Citigroup*, 598 F.3d at 35 & n.4 (distinguishing standards). This standard

requires Defendants to show simply that "'there are serious questions going to the merits of

the dispute and . . . the balance of hardships tips decidedly in [their] favor.'"  *Blum*, 2015 WL

6685357, at *1 (quoting *In re A2P SMS Antitrust Litig.*, 2014 WL 4247744, at *2). Defendants

easily satisfy this standard.

### A. Defendants' Serious Questions Going to the Merits.

Notwithstanding the Court's adverse rulings, Defendants have several serious

questions going to the merits of this dispute. Both the length of the Court's Decision (32

pages) and the amount of time the Court devoted to it (over 11 months) appear to be indicia of

the seriousness of these questions. Further, Defendants respectfully submit the following as

serious questions that should be considered:

    1. <u>Are the recordkeeping requirements under CFR §1.31 and §1.35 required to be strictly</u>
      <u>construed?</u>

The Court rightly asserted that introducing brokers must keep and produce financial

and regulatory records. However, it was incorrect to apply a strict liability framework to Rule 1.35

while ignoring exemptions under Rule 1.35 (a)(1) as not "germane to this case.." See (Dkt No. 101) "Decision" at page 5 Footnote 5.[12]  In 2012, Rule 1.35(a) (1) was amended and exempted Defendants from certain requirements.[13] This curtailed an expansive reading of the statute and violates CFTC's own policy of allowing "alternative compliance mechanisms with respect to records."  CFTC failed to explain why it ignored the exemption for the more stringent requirement and asserted a violation of a rule from which Defendants are exempt. CFTC's application of the statute to the facts is not based upon reason. The appearance of prejudicial retribution, retroactive application and a shift away from policy and congressional intent should have precluded deference. This is true in light of the recent decision in *Kisor v. Wilkie*, which counsels that courts should not defer to agency interpretations of their own regulations when the provision in question is not truly ambiguous and when the interpretation does not appear to be the product of fair and considered judgement. 139 S.Ct. 2400, 2414 (2019).

Additionally, a strict approach is also at odds with the purpose of the Act and CFTC's own rulemaking and policy. This kind of bright line application prioritizes swift adjudication over procedural safeguards. This dichotomy cannot be sustained because it is directly in conflict with the Supreme Court's exhortation that "... "that the right to be heard before being condemned to suffer grievous loss of any kind... is a principle basic to our society," *Mathews v. Eldridge*, 341 U.S. at 168.

The termination of a brokerage license arbitrarily withdrawn after an agency exceeds its authority and misapplies the facts and the purpose of the statue is an important issue worthy of appellate consideration. Respectfully, the statutory interpretation of 17 CFR § 1.35, and its

---

[12] Congress mandated that the CFTC assure that introducing brokers remain economically viable and not be subject to burdensome regulatory requirements.
[13]   82 Fed. Reg. at 24,481.

exemptions, is an issue of first impression which, itself, establishes the presence of "serious

questions going to the merits of the present dispute," *In re A2P SMS Antitrust Litig.*, 2014 WL

4247744, at *2.

> 2. <u>Was summary adjudication appropriate to provide Defendants with a meaningful right to be heard</u>

The Court concluded that summary disposition was appropriate and found Defendants

liable for all violations without affording an evidentiary hearing.[14] While summary judgment has

been found permissible at times without the need to weigh all the evidence, the court failed to

credit any evidence contradicting CFTC's factual conclusions.[15] For summary judgment to be

appropriate, especially with regard to a false statement charge, inferences must be drawn in a light

most favorable to nonmovant.[16]  Defendants opposition in response to summary judgment was

noted as "self-serving." (Order (Dkt. No. 101)) No affidavit or testimony was authenticated[17] and

summary judgment deprived Defendants of the right to clarify or dispute the meaning of testimony

by confronting and cross-examining witnesses.[18]  What the Supreme Court said

in *Greene* v. *McElroy*, 360 U.S. 474, 496-497(1959), is particularly pertinent here:

> "Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. . . . This Court has been zealous to protect these rights from

---

[14] *See, SEC v. Capital Sols. Monthly Income Fund, LP* 818 F.3d 346 (8th Cir. 2016) defendant in securities action was entitled to a jury trial on liability; *See also*, *SEC v. Lipson* 278 F.3d 656 (7th Cir. 2002).

[15] The absence of authentication and proper foundation preclude summary judgment. *Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) (attorney declaration without court reporter certificate insufficient to authenticate deposition transcript).

[16] *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991), *cert. denied*.

[17] *SEC v. Life Partners Holdings*, Inc., No. 14-51353 (5th Cir. 2017).

[18] 582 F.2d at 1140.

9

erosion. It has spoken out not only in criminal cases, . . . but also in all types of
cases where administrative . . . actions were under scrutiny."

"Abuse occurs when a material factor deserving significant weight is ignored, when an

improper factor is relied upon, or when all proper and no improper factors are assessed, but the

court makes a serious mistake in weighing them." *Independent Oil and Chemical Workers of*

*Quincy, Inc. v. Procter & Gamble Mfg. Co*., 864 F.2d 927, 929 (1st Cir. 1988). [19] In the instant

case, the issue of whether summary judgment was precluded and the need for an evidentiary

hearing is a serious question going to the merits of the dispute.

> 3.  Is interpretation of statements sufficient to prove a false statement charge?

The Court determined that Moore "indisputably provided false testimony." (Dkt. No. 101

page 14). The actual words deemed false are not represented in the transcript and responses were

interpreted by CFTC as false without cross-examination and over Defendants' objection.  The

complaint alleged that Moore testified that a spreadsheet was "the sole record EFT made."

(Complaint, Page 11, ¶30.)  This statement is not recorded in the transcript of September 18, 2015

and, yet, is the basis for the charge. (Dkt. No. 51-6) What is clear from a plain reading of the

testimony is that Moore's statements, affidavits, and the testimony of another witness are easily

taken out of context to suit a narrative.  For example, the Court relies on the testimony and

spreadsheet identified as "Chris Spreadsheet" to corroborate the claim that the spreadsheet Moore

referred to in earlier testimony was 'non-existent.' (Dkt. No. 101 at 11).  The problem with this

analysis is that it is done in a vacuum.  Moore testified about several spreadsheets and it was

misleading to rely on someone else's testimony as probative of the truth of Moore's statements

---

[19] *See* also *Anderson v. Cryovac, Inc*., 862 F.2d 910, 923 (1st Cir. 1988) (to warrant reversal for
abuse of discretion, it must "plainly appear[ ] that the court below committed a meaningful error in
judgment").

10

without having the ability to cross-examine both witnesses and compare the exhibits presented to each witness.  The interpretation of Moore's testimony assumes facts not in evidence and deprived the Defendant of the right to be heard and confront witnesses. The harm is the erosion of a truth-seeking function and loss of legal rights for the benefit of judicial expediency.

It was also error to give any weight to the assertion that Moore's statements impacted the central premise of CFTC's investigation.  CFTC provided no evidence that the investigation was thwarted by Moore's statements.  The record demonstrates that CFTC did not review any spreadsheet produced during the investigation.  The investigation was initiated on a violation that did not exist. CFTC informed Defendants it was investigating a "wash sale" rule violation.[20] When it determined there was no wash-sale violation; it developed the narrative that Moore made a false statement. This appears to bolster the other charges and pave the way to request excessive sanctions.

Equally important as the right to be heard, however, is the right to evenhanded justice.  A false statement charge can have an explicit prejudicial effect.  Being found liable for a false statement has a permanent impact, including a ban from registration for conduct deemed a "disqualifying event" and injury to one's reputation. The issue as to whether Defendants were prejudiced when CFTC failed to meet its burden of proof for a false statement charge is a serious question going to the merits of the dispute.

4. <u>Did the Court deprive Defendants of due process when it failed to hold a hearing on sanctions, and mitigation in particular?</u>
Finally, the Court ordered sanctions that were not as excessive as those requested by

---

[20] 7 U.S.C. § 6c(a) (2006), which, *inter alia,* prohibits any person from entering into a transaction that is, or is of the character of, or is commonly known to the trade as, a "wash sale."

CFTC. However, it did so without providing a hearing on mitigating factors, thus depriving

Defendants of due process. And while the sanctions directed by the Court appear reasonable (in

contrast to the CFTC request), a five-year ban and the requirement to obtain a guaranteed

introducing brokerage agreement ("GIB") operate to force Defendants out of the industry; which

appears to be exactly what CFTC set out to accomplish.  This is true because no clearing firm will

enter into a GIB with Defendants. In fact, every one of Defendants clearing arrangements were

terminated after the Court granted summary judgment.

Further, the GIB requirement may be considered excessive in light of the fact that

Defendants no longer provide execution or clearing services for its clients. Because Defendants

do not engage in this business, no FCM will be willing to enter into a GIB agreement that will not

result in any business. These are the kinds of factors that would have been considered if a hearing

on mitigation was held.  Without a hearing, especially when the factual background is

undeveloped, the court had no basis upon which to impose sanctions which permanently harm

Defendants.[21]

Consequently, the issue of whether a hearing is required before imposing sanctions that

revoke a license is a serious question going to the merits of the dispute.

**B. The Balance of the Hardships Tips Decidedly in Defendants' Favor.**

As explained above, Defendants will suffer irreparable and severe harm if a stay

pending appeal is not issued.

Presumably, the CFTC will renew its complaint – that a stay pending appeal will

prejudice it substantially by further delaying the imposition of sanctions.[22] But "mere delay in

---

[21] *CFTC v. American Metals Exchange Corp.*, 991 F.2d 71, 77 (3d Cir. 1993).

[22] CFTC periodically complained about delays necessitated by this litigation, but never explained

receiving the information requested does not constitute substantial prejudice." *S.E.C. v. Finazzo*, No. M18- 304, 2008 WL 1721517, at *5 (S.D.N.Y. Apr. 11, 2008)  "not . . . essential to the progress of the . . . investigation"); *accord E.E.O.C. v. Quad/Graphics, Inc.*, 875 F. Supp. 558, 560 (E.D. Wis. 1995) (finding that "a delay in [a government agency's] receipt of the information that it has requested" does not constitute "substantial harm").

Under the extant circumstances, CFTC simply cannot show that a stay pending appeal – likely to be resolved within a year[23] – will cause it *substantial* injury.  Defendants' records and business activities (which are substantially different from their prior business activities; Defendants no longer provide execution or clearing services) would remain subject to inspection and nothing in the record demonstrated harm to the CFTC, industry participants or the markets (even in connection with Defendants' prior business activities).

Defendants have made best efforts to comply with the rules throughout and, even prior to the entry of judgment, they reduced operational and regulatory risk by engaging in passive activities. Again, it does not have client accounts on its books or maintain clearing arrangements to execute trades.  CFTC's investigation was concerned with record keeping and supervisory activities relating to third-party trading systems. Defendants no longer employ third party trading systems or execute trades for clients (and it does not intend to engage in this kind of business in the future).

Moreover, a stay pending appeal will, on balance, advance the public interest. Even crediting the fact that the Defendants may on occasion technically violate record keeping or

---

how such delays actually have prejudiced it, let alone *substantially* so.

[23] *See* U.S. Courts, U.S. Courts of Appeals – Federal Court Management Statistics – Summary – 12-Month Period Ending June 30, 2015, *available at* http://www.uscourts.gov/file/18451/download (noting that, in the Second Circuit, the "median time from filing notice of appeal to disposition" is "10.0 months")

supervisory rules, the CFTC still has not demonstrated harm to the public for these acts –

particularly in light of NFA's 2016 audit. (Order (Dkt. No. 101)) In addition, the issues raised on

appeal serve to address whether CFTC abused its authority and would repeat this pattern in the

future. As such, a stay without the requirement for a surety bond is warranted without actual

encumbrance on either party.[24]

Thus, whatever the public's (limited) interest might be in expediting this single case, that

interest pales in comparison to the broader public interests in safeguarding constitutional privileges

and promoting the fundamental right to appeal– interests that necessarily would be eroded absent a

stay.

**III.   Alternatively, the Court Should Grant a Temporary Administrative Stay.**

If the Court concludes that Defendants' do not present "serious questions" and, further,

absent a stay "the balance of hardships" does not "tip[s] *decidedly* in [Defendants'] favor,"

*Blum*, 2015 WL 6685357, at \*1 (quotation marks omitted), Defendants respectfully request that

the Court, *sua sponte*, issue a temporary stay so Defendants can seek relief from the Second

Circuit pursuant to Rule 8(a)(2) of the Federal Rules of Appellate Procedure.

The Second Circuit has noted this practice favorably and Courts in this Circuit have

followed this practice. *Front Carriers Ltd. v. Transfield ER Cape Ltd.*, No. 07-cv-6333, 2010

WL 571967, at \*1 (S.D.N.Y. Feb. 15, 2010); *HC Trading Int'l Inc. v. Crossbow Cement, SA*, No.

08-cv-11237, 2009 WL 4931341, at \*3 (S.D.N.Y. Dec. 21, 2009).

---

[24] *In re Nassau County Strip Search Cases,* 783 F.3d 414 (2d Cir. 2015).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court issue a

stay of judgment pending appeal.

Dated: April 23, 2020                                        Respectfully submitted,

                                                            /s/ Brad S. Maistrow
                                                            BRAD S. MAISTROW, P.C.
                                                            By: Brad S. Maistrow
                                                            Attorneys for Defendants

                                                            48 Wall Street, 11th Floor
                                                            c/o Meyers, Meyers & Tonachio
                                                            New York, NY 10005
                                                            Tel: 917.817.8007

15