UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

- against -

EFLOORTRADE, LLC; and JOHN A. MOORE,

Defendants.

**ORDER**

16 Civ. 7544 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

This is a civil enforcement action brought by the U.S. Commodity Futures Trading Commission ("CFTC") against Defendants eFloorTrade, LLC and John Moore. eFloorTrade – which is wholly owned and operated by Moore and members of his immediate family – provides "trade execution services" to customers who have subscribed to third party trading systems ("TPTSs"). (Sum. J. Order (Dkt. No. 63) at 2-3)[1] When an eFloorTrade customer uses a TPTS, trading instructions or signals are electronically sent to eFloorTrade, and the company then electronically places orders on behalf of its customers with a futures commission merchant. (Id. at 2)

The CFTC alleges that, between October 2010 and October 2015, Defendants (1) made false or misleading statements to the CFTC, in violation of 7 U.S.C. § 9(2); (2) failed to keep and produce required books and records, in violation of 7 U.S.C. § 4g(a), 17 C.F.R. §§ 1.31(a)(1) and (2), and 17 C.F.R. §§ 1.35(a)(1) and (3); (3) failed to make and/or prepare

[1] Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

required records, in violation of 7 U.S.C. § 4g(a) and 17 C.F.R. § 1.35; and (4) failed to properly supervise, in violation of 17 C.F.R. § 166.3. (Cmplt. (Dkt. No. 1))

On September 21, 2018, this Court granted the CFTC summary judgment as to liability. (Sum. J. Order (Dkt. No. 63)) The Court denied Defendants' motion for reconsideration on February 7, 2019. (Dkt. No. 86) On April 3, 2020, this Court issued an order imposing civil monetary penalties on Defendants and granting the CFTC injunctive relief. (Memorandum Opinion & Order (Dkt. No. 101) ("Sanctions Order"))

In the Sanctions Order, Defendants are (1) permanently enjoined from committing the conduct for which they were found liable; and (2) enjoined from registering with the CFTC or acting as a principal of any person registered with the CFTC for five years. (Id. at 29-31)[2] The Court also imposed an $80,000 civil monetary penalty on Defendants for the supervisory and recordkeeping violations (Counts Two through Four), and a $140,000 civil monetary penalty on Moore for making false statements to the CFTC (Count One). (Id. at 31) Judgment was entered on April 7, 2020. (Dkt. No. 102)

On April 23, 2020, Defendants filed a notice of appeal. (Dkt. No. 106) On April 24, 2020, Defendants moved for a stay of the judgment pending appeal. (Def. Br. (Dkt. No. 111)) Alternatively, Defendants request a "temporary administrative stay" to allow them to seek a stay from the Second Circuit pursuant to Federal Rule of Appellate Procedure 8(a). (Id. at 18) The CFTC opposes Defendants' motion, except that it consents to a temporary administrative stay if that stay "does not exceed more than a few days." (Pltf. Opp. (Dkt. No. 114) at 25) For

[2] As discussed below, these restrictions do not apply to eFloorTrade if it is a party to a guarantee agreement with a registered futures commission merchant pursuant to Regulation 1.10(a)(4) and (j), 17 C.F.R. § 1.10(a)(4), (j) (2018).

the reasons below, Defendants' motion for a stay is denied, except that judgment will be stayed for seven days to allow Defendants to seek a stay from the Second Circuit.

## DISCUSSION[3]

### I. LEGAL STANDARD

"A district court possesses the power to stay its own order during the pendency of an appeal of that order." In re A2P SMS Antitrust Litig., No. 12-CV-2656, 2014 WL 4247744, at *1 (Aug. 27, 2014) (collecting cases). Courts consider four factors in deciding a motion for a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (internal quotation marks omitted). "Likelihood of success and irreparable injury are the most 'critical' factors in this analysis . . . and a stronger showing on one of these factors can offset a weaker showing on the other." In re A2P, 2014 WL 4247744, at *2 (internal citations omitted). The party seeking a stay pending appeal bears the "heavy burden" of demonstrating that a stay is warranted. Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin., 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012).

[3] Familiarity with the Court's Summary Judgment Order (Dkt. No. 63) and Sanctions Order (Dkt. No. 101) is assumed. See CFTC v. eFloorTrade, LLC, No. 16 Civ. 7544 (PGG), 2018 WL 10625588 (S.D.N.Y. Sept. 21, 2018); CFTC v. eFloorTrade, LLC, No. 16 Civ. 7544 (PGG), 2020 WL 1673313 (S.D.N.Y. Apr. 3, 2020).

## II. ANALYSIS

### A. Likelihood of Success on the Merits

"The Second Circuit has long recognized that the 'likelihood of success on the merits [factor]' . . . can be satisfied if there are 'serious questions going to the merits of the dispute and the applicant is able to establish that the balance of hardships tips decidedly in its favor." In re A2P, 2014 WL 4247744, at *2 (citing Citigroup Global Mkts., Inc. v. VCG Special Opportunities Fund, Ltd., 598 F.3d 30, 35 (2d Cir. 2010)) (emphasis in Citigroup Global Markets). The CFTC argues that the more lenient "serious questions" standard should not apply because "Defendants are seeking to stay an action taken by the [CFTC], a government agency, in the interests of the public." (Pltf. Opp. (Dkt. No. 114) at 9 n.2) see Citigroup Global Markets, 598 F.3d at 35 (noting that when a movant seeks a preliminary injunction to "'stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous 'serious questions' standard'") (quoting Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995)) (alteration omitted). As explained below, Defendants' appeal does not satisfy either test, so the parties' dispute about the proper standard is academic.[4]

#### 1. Liability for Recordkeeping and Supervisory Violations

As to the alleged recordkeeping and supervisory violations, Defendants stipulated that they had committed these violations. In a July 25, 2017 stipulation (Dkt. No. 51-20), Defendants agreed that:

> 1. From October 2010 to October 2015 ("Relevant Period"), [eFloorTrade] violated its recordkeeping obligations under Section 4g(a) of the Commodity

[4] The CFTC contends that Defendants have waived their right to appeal the Summary Judgment Order (Dkt. No. 63). According to the CFTC, any appeal of that Order was due within 28 days of this Court's February 7, 2019 order denying Defendants' motion for reconsideration (Dkt. No. 86). (Pltf. Opp. (Dkt. No. 114) at 13 & n.4) Because Defendants did not file a notice of appeal until April 23, 2020, the CFTC argues that any appeal of the Court's liability findings would be

Exchange Act (the "Act") and Commission Regulations 1.31 and 1.35 when at various times, (through the conduct of Moore and/or [eFloorTrade]'s employees, officers and agents) it failed to keep full, complete, and systematic records of all transactions relating to its business of dealing in commodity futures for a period of five years from the date thereof, and to produce them for inspection to the CFTC. These records included, but are not limited to: (1) trading instructions or trading signals [eFloorTrade] electronically received from a third party trading system provider specifying the commodity interest to be bought or sold for a customer's account, and (2) a written record of all customer orders (filled, unfilled or cancelled).

2. Moore directly and indirectly controlled [eFloorTrade] and its employees. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Moore is liable as a controlling person for [eFloorTrade]'s violations stipulated to in paragraph 1.

. . . .

4. [eFloorTrade] also violated Section 4g(a) of the Act and Regulation 1.35 when at various times (through the conduct of Moore and/or [eFloorTrade]'s employees, officers and agents) it failed to prepare, immediately upon receipt, a written record of [eFloorTrade]'s customer's order including account identification and order number and record thereon, by timestamp or other timing device, the date and time, to the nearest minute, the order was received for its customer who subscribed to a third party trading system.

5. Moore directly and indirectly controlled [eFloorTrade] and its employees. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Moore is liable as a controlling person for [eFloorTrade]'s violations stipulated to in paragraph 4.

. . . .

7. [eFloorTrade] also violated Regulation 1.31, when at various times (through the conduct of Moore and/or [eFloorTrade]'s employees, officers and agents) it failed to provide to the [CFTC] records such as trading instructions or

---

untimely. (Id.) When the Court decided Defendants' motion for reconsideration, however, the issues of injunctive and monetary relief were still outstanding, and therefore the case was not ripe for appeal. Thus, the CFTC's waiver argument lacks merit. See, e.g., Mead v. Reliastar Life Ins. Co., 768 F.3d 102, 110 (2d Cir. 2014) ("'An order granting summary judgment on the issue of liability, but requiring a calculation of damages, is not an appealable final order'") (quoting In re Fugazy Express, Inc., 982 F.2d 769, 775 (2d Cir. 1992)); Henrietta D. v. Giuliani, 246 F.3d 176, 180-82 (2d Cir. 2001) (declaratory judgment found not appealable where it "did nothing more than determine liability, leaving the measure of prospective relief for another day"); Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1175 (2d Cir. 1995) ("A judgment fixing liability without a calculation of damages – unless their computation is merely ministerial in nature – is not an appealable final order.").

> signals and a written record of customer orders in an easily readable hard copy image or on such data processing media approved by the [CFTC].
>
> 8. Moore directly and indirectly controlled [eFloorTrade] and its employees. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Moore is liable as a controlling person for [eFloorTrade]'s violations stipulated to in paragraph 7.
>
> . . . .
>
> 11. [eFloorTrade] and Moore violated Regulation 166.3, 17 C.F.R. § 166.3 (2015), in that they, among other things, did not diligently supervise the handling of commodity interest accounts and all other activities of [eFloorTrade]'s partners, officers, employees and agents. [eFloorTrade] and Moore failed to design, implement, maintain, and enforce an adequate program of supervision to meet its regulatory obligations. Their supervision failures consisted in part of the following: 1) failing to design, implement, maintain and enforce an adequate program of supervision to ensure compliance with [eFloorTrade]'s recordkeeping obligations under section 4g of the Act and Regulations 1.31 and 1.35; 2) failing to design, implement, maintain, and enforce an adequate program of supervision to ensure compliance with [eFloorTrade]'s own internal policies and procedures; and 3) failing to design, implement, maintain and enforce an adequate program of supervision to handle routine margin calls for [eFloorTrade]'s customers.

(Sum. J. Order (Dkt. No. 63) at 6-7 (quoting Stipulation (Dkt. No. 51-20) ¶¶ 1-2, 4-5, 7-8, 11)) (quotation marks omitted).

Given the parties' stipulation, Defendants' liability for the alleged recordkeeping and supervisory obligations is clear. Given that Defendants admitted that they violated the applicable regulations, Defendants' current argument that the Court's construction of the regulations was too "strict" is frivolous. (Def. Br. (Dkt. No. 111) at 11-12) see AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 736 (2d Cir. 2010) ("'Just as a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony, so too a party cannot in litigation take a position of convenience contrary to its prior statements to regulatory authorities.'") (quoting UBS AG v. HealthSouth Corp., 645

F. Supp. 2d 135, 145 n.14 (S.D.N.Y. 2008)) (alterations omitted); Fisher v. First Stamford Bank & Tr. Co., 751 F.2d 519, 523 (2d Cir. 1984) ("Generally, a stipulation of fact that is fairly entered into is controlling on the parties and the court is bound to enforce it."); Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991) ("[A] party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.").[5]

**2. Liability for Making False Statements to the CFTC**

As to the false statements charge, it is likewise clear that Moore gave false testimony when he appeared before the CFTC on September 18, 2015.[6] (Sum. J. Order

---

[5] Defendants argue that they agreed to the stipulation only because their now-deceased former counsel provided poor advice (Def. Br. (Dkt. No. 111) at 9; Moore Reply Aff. (Dkt. No. 118) ¶ 19), but this argument provides no basis for setting aside the stipulation. See, e.g., Link v. Wabash R. Co., 370 U.S. 626, 633-34 & n.10 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' . . . [I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant."); Latshaw v. Trainer Wortham & Co., 452 F.3d 1097, 1101 (9th Cir. 2006) ("[P]arties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel. This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct."); Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp., 400 F. Supp. 3d 7, 16 (S.D.N.Y. 2019) ("'[L]itigants are generally bound by the professional conduct of the attorneys they choose to represent them, although the conduct of counsel may give rise to a claim for malpractice by the client.'") (quoting Davidowitz v. Patridge, No. 08 Civ. 6962 (NRB), 2010 WL 1779279, at *4 (S.D.N.Y. Apr. 23, 2010)); Negron v. Weiss, No. 06 Civ. 1288, 2006 WL 2792769, at *5 (E.D.N.Y. Sept. 27, 2006) ("[A party] is bound by her own representations, no matter why they were made. . . . The remedy for bad legal advice lies in malpractice litigation against the offending lawyer.") (internal quotation marks omitted).

[6] Moore's false testimony is discussed in greater detail in the Summary Judgment Order (Dkt. No. 63 at 7-12).

(Dkt. No. 63) at 8)  In response to a question about how eFloorTrade maintained records of trading signals, Moore testified that the company made and kept an Excel spreadsheet that listed trading instructions or signals received from a TPTS (the "Spreadsheet").  (Id. at 9)  Moore testified about the Spreadsheet at length, stating that each day he and his son Chris Moore manually input into the Spreadsheet trading instructions or signals received on behalf of TPTS customers.  (Id.)  Moore testified that he and Chris Moore used the Spreadsheet on a daily basis to compare trades that were executed for eFloorTrade customers with the trading instructions or signals received by eFloorTrade on behalf of those customers.  (Id.)  Moore testified that he saved a copy of the Spreadsheet on his computer each day.  (Id.)  He also testified that the Spreadsheet was password-protected and that only he, Chris Moore, and an information technology employee had the password.  (Id.)

It later became clear, however, that the Spreadsheet about which Moore provided extensive testimony on September 18, 2015, did not exist as of that date.  Indeed, two months later – in a November 12, 2015 letter to the CFTC – Defendants admitted that eFloorTrade "'does not create or maintain any spreadsheets relating to trades placed in accordance with a third party trading system.'"  (Id. at 8 (quoting Def. Resp. to Pltf. R. 56.1 Stmt. (Dkt. No. 57) ¶ 68))  And when Moore was deposed in the instant case on August 1, 2017 (Moore Dep. (Dkt. No. 51-8)), he testified that the Spreadsheet about which he had testified in September 2015 was not created until November 2015.  (Sum. J. Order (Dkt. No. 63) at 11)  Accordingly, in September 2015, Moore's provided extensive testimony about a spreadsheet that did not exist. (Id.)  And in a November 2, 2017 affidavit submitted in opposition to the CFTC's motion for summary judgment, Moore admitted that he had "made certain statements about a spreadsheet

[during his September 18, 2015 testimony] that were inaccurate." (Moore Aff. (Dkt. No. 58-1) ¶¶ 2-3)

To prove a violation of Section 6(c)(2) of the Commodity Exchange Act for making a false statement, the CFTC must prove, by a preponderance of the evidence, that: (1) a false or misleading statement was made to the CFTC; (2) the statement was material; and (3) the author of the statement knew or reasonably should have known that the statement was false or misleading. (Sum. J. Order (Dkt. No. 63) at 15 (citing 7 U.S.C. § 9(2); CFTC v. Vartuli, 228 F.3d 94, 100 (2d Cir. 2000); CFTC v. Arista LLC, No. 12 CV 9043 PAE, 2013 WL 6978529, at *13 (S.D.N.Y. Dec. 3, 2013); In re Bielfeldt, CFTC No. 96-1, 2004 WL 2785293, at *11 (CFTC Dec. 2, 2004))

Given that Moore has admitted that his September 18, 2015 testimony was inaccurate (Moore Aff. (Dkt. No. 58-1) ¶¶ 2-3), the first element is clearly satisfied, and Defendants' argument that the CFTC "[mis]interpreted" Moore's statements and took them "out of context" is frivolous.[7] (Def. Br. (Dkt. No. 111) at 14)

As to the second element, Defendants have waived any argument that Moore's false statements were not material.[8] (Sum. J. Order (Dkt. No. 63) at 17 n.9 (noting that

[7] In a reply affidavit, Moore submits a copy of a spreadsheet that includes trading information for a single day – September 2, 2015. This is plainly not the spreadsheet about which Moore testified, which he claimed was prepared each and every day. (Moore Reply Decl. (Dkt. No. 118) ¶ 7, Ex. A (Dkt. No. 118-1))

[8] Moore's false statements were, in any event, plainly material. Although Defendants argue that the "CFTC provided no evidence that the investigation was thwarted by Moore's statements," (Def. Br. (Dkt. No. 111) at 15; see also Moore Reply Aff. (Dkt. No. 118) ¶ 17), "a statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical matter." United States v. Adekanbi, 675 F.3d 178, 182 (2d Cir. 2012) (emphasis added). Whether Moore's false testimony actually influenced the CFTC's investigation is not the test. The CFTC's investigation indisputably required an examination of eFloorTrade's records regarding trading instructions and signals that it received

Defendants' opposition brief does not dispute that Moore's false testimony at the September 18, 2015 hearing was material))

As to the third element, Moore has claimed that he "would never knowingly or intentionally make a false statement under oath," and that it "was never [his] intent to mislead or deceive the CFTC." (Moore Aff. (Dkt. No. 58-1) ¶ 8)  But Section 6(c)(2) makes it "unlawful for any person to make any false or misleading statement of a material fact . . . if the person knew, or reasonably should have known the statement to be false or misleading."  See 7 U.S.C. § 9(2) (emphasis added).  At a minimum, Moore conveyed information that he reasonably should have known was false given his responsibility for, inter alia, ensuring eFloorTrade's compliance with the Commodity Exchange Act (and the regulations promulgated thereunder), preparing eFloorTrade's financial books and records, and ensuring that eFloorTrade kept the trading instructions or signals received from TPTSs.[9]  (Sum. J. Order (Dkt. No. 63) at 17)

In sum, Defendants have not shown that their appeal of the Court's Summary Judgment Order (Dkt. No. 63) will succeed or that it will raise serious questions going to the merits.[10]  Indeed, the arguments raised by Defendants are frivolous.

---

from TPTSs. (Sum. J. Order (Dkt. No. 63) at 17)  When Moore testified falsely about a spreadsheet prepared on a daily basis that purportedly contained such information, his testimony was "capable of influencing[]" the CFTC's decision about whether to charge Defendants with recordkeeping violations.  Adekanbi, 675 F.3d at 182.  Moore's false statements were also capable of "distracting [the CFTC's] attention away from" a central focus of its investigation – whether Defendants maintained the required records.

[9]  In any event, Moore's detailed testimony about a non-existent spreadsheet constitutes overwhelming evidence that he knowingly and intentionally provided false testimony.  See CFTC v. Int'l Fin. Servs. (New York), Inc., 323 F. Supp. 2d 482, 509 (S.D.N.Y. 2004) ("[T]o view the evidence in the light most favorable to the nonmoving party, resolving ambiguities and drawing all inferences in its favor, is not to suspend disbelief.") (internal citations omitted).

[10]  Defendants also argue that their "due process" rights were violated, and that the CFTC acted in an arbitrary and capricious manner during this litigation and in the investigation that preceded it, but Defendants offer no cogent theory as to how these assertions will translate into success on appeal.  (Def. Br. (Dkt. No. 111) at 8-9 (arguing that the CFTC's motion for summary judgment

**3. Sanctions Award**

In its motion for sanctions, the CFTC sought a civil monetary penalty of $1,120,000 ($140,000 x 8 violations) for recordkeeping and supervisory violations against Defendants, and a $420,000 penalty against Moore ($140,000 x 3 violations) for making false statements. (Pltf. Sanctions Br. (Dkt. No. 93) at 16) The CFTC also requested a permanent injunction enjoining: (1) Defendants from directly or indirectly committing the conduct for which the Court found them liable; (2) Moore from applying for registration or claiming exemption from registration with the CFTC in any capacity and engaging in any activity requiring such registration or exemption from registration except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018) ("Registration Ban"); and (3) Moore from acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the [CFTC] except as provided for in 17 C.F.R. § 4.14(a)(9) ("Principal Ban"). (Id. at 5) Finally, the CFTC requested a permanent Registration Ban and Principal Ban against eFloorTrade, unless eFloorTrade was a party to a guarantee agreement with a registered futures commission merchant pursuant to Regulation 1.10(a)(4) and (j), 17 C.F.R. § 1.10(a)(4), (j) (2018). (Id. at 5-6)

After a detailed examination of the underlying facts and gravity of the violations (Sanctions Order (Dkt. No. 101) at 21-23, 26-29), the Court imposed a total civil monetary penalty of $80,000 on the Defendants for the supervisory and recordkeeping violations, and a total civil monetary penalty of $140,000 on Moore for making false statements. (Id. at 28-29) The Court also permanently enjoined Defendants from committing the conduct for which they

was a "capricious act[]"); Def. Reply (Dkt. No. 117) at 12 (arguing that Defendants were deprived of "due process" because the Court decided the CFTC's sanctions motion on the papers)

were held liable, but limited the requested Registration and Principal Bans to five years, rather than the permanent bans sought by the CFTC.  (Id. at 21-23)

"The [Commodity Exchange Act] affords district courts broad discretion in fashioning appropriate remedies . . . , including the imposition of civil monetary penalties." CFTC v. Paragon FX Enterprises, LLC, No. 11 CV 7740 FM, 2015 WL 2250390, at *5 (S.D.N.Y. Feb. 2, 2015).  "Civil penalty assessments" and equitable relief "are reviewed only for abuse of discretion."  CFTC v. Levy, 541 F.3d 1102, 1110 (11th Cir. 2008); see Guttman v. CFTC, 197 F.3d 33, 41 (2d Cir. 1999) (analyzing whether "[CFTC's] choice of sanctions was . . . an abuse of discretion").

Defendants have not articulated any reason to believe that the penalties and injunctive relief imposed by the Court constitute an abuse of discretion.  Defendants' primary argument is that the Court imposed sanctions without holding an evidentiary hearing.  (Def. Br. (Dkt. No. 111) at 15-16)  Defendants never requested an evidentiary hearing, however.  (Id. at 16 n.6)  And Defendants cite no authority for the proposition that an evidentiary hearing was required.  Cf. CFTC v. All City Investments, LLC, No. 16-CV-7372 (AJN), 2018 WL 2465377, at *2 (S.D.N.Y. June 1, 2018) ("To determine the amount of damages, the Court may conduct a hearing, but doing so is not necessary. . . ."); In re Dynex Capital, Inc. Sec. Litig., No. 05cv1897 (HB) (DF), 2011 WL 2581755, at *3 (S.D.N.Y. Apr. 29, 2011), report and recommendation adopted, 2011 WL 2471267 (S.D.N.Y. June 21, 2011) ("[I]t is within the Court's discretion to hold an evidentiary hearing on a sanctions motion, although no such hearing is required.").

In sum, Defendants have not shown that their appeal of the Sanctions Order (Dkt. No. 101) will succeed or will raise serious questions going to the merits.  Indeed, the arguments offered by Defendants are frivolous.

**B. Irreparable Harm**

Defendants contend that – since this Court's Sanctions Order (Dkt. No. 101) was issued – they "have refrained from engaging in any business activity requiring registration." (Def. Br. (Dkt. No. 111) at 7) As a result, "Defendants have necessarily lost revenue." (Id.) They have "no client accounts" on the books and have "not executed trades for clients or solicited business." (Id.) Absent a stay, Defendants argue that they "will instantly be put out of business and their right to appeal will lose all constitutional, legal, and practical value." (Id.) Although the Principal and Registration Bans do not apply to eFloorTrade if it enters into a guarantor agreement with a futures commission merchant (Sanctions Order (Dkt. No. 101) at 29-31), Defendants assert that they cannot find a willing guarantor. (Def. Br. (Dkt. No. 111) at 16; Moore Reply Aff. (Dkt. No. 118) ¶ 18) Moore further states that the Principal and Registration Bans make it very difficult for him to work in the financial industry. (Moore Reply Aff. (Dkt. No. 118) ¶¶ 6, 9)

The CFTC asserts that – in correspondence with the National Futures Association ("NFA") following the issuance of the April 3, 2020 Sanctions Order – Moore portrayed Defendants' future as considerably less bleak.[11] (Pltf. Opp. (Dkt. No. 114) at 19) In an April 13, 2020 email to the NFA, Moore states that eFloorTrade's "business activities continue to be limited and revenue continues to generate less income," but that the Company's "intent is to continue operating and serve the best interests of our clients and abide by NFA and CFTC guidelines. (Apr. 13, 2020 email (Dkt. No. 115-1) at 6, 16) Moore further states that eFloorTrade has "12 customers" and that he made a "financial contribution" to ensure that eFloorTrade would "meet any deficiencies in net capital requirements" resulting from the

---

[11] The NFA is a self-regulatory agency for the futures industry.

$80,000 civil monetary penalty against eFloorTrade. (Id. at 5, 15; Apr. 16, 2020 email (Dkt. No. 115-1) at 13; see also Moore Reply Aff. (Dkt. No. 118) ¶ 14) Moore also notes that eFloorTrade has "been inquiring with [futures commission merchants] as to a guarantee . . . agreement." (Apr. 13, 2020 email (Dkt. No. 115-1) at 6, 16)

Given that Defendants have not shown a likelihood of success on appeal, their showing of irreparable harm must be especially strong. See Rice Co. v. Precious Flowers Ltd., No. 12 CIV. 0497 JMF, 2012 WL 2006149, at *6 (S.D.N.Y. June 5, 2012) ("In light of the weakness of its case on the merits, th[e] failure [to demonstrate irreparable harm] is especially significant, as the amount of irreparable injury a plaintiff must demonstrate it will suffer absent a stay is inversely proportional to the probability of its success on the merits.") (citing Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002)).

Defendants' conclusory allegations about their financial difficulties and struggles to remain operational are not sufficient to make a strong showing of irreparable harm absent a stay. See Hidalgo v. New York, No. 11-CV-5074 JS GRB, 2012 WL 3598878, at *2 (E.D.N.Y. Aug. 20, 2012) ("[W]hile monetary loss may support a finding of irreparable harm in situations where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy or is in a perilous financial state, . . . conclusory assertions of a defendant's financial weakness do not demonstrate a likelihood of such harm. . . .") (internal quotation marks and alterations omitted); Cleantech Innovations, Inc. v. NASDAQ Stock Mkt., LLC, No. 11 CIV. 9358 KBF, 2011 WL 7138696, at *5 (S.D.N.Y. Dec. 30, 2011) ("Plaintiff alleges that if CleanTech is delisted from NASDAQ, it will lose financing and be forced into insolvency. . . . However, Plaintiff offers little more than conclusory assertions as to the consequences that will befall the company in the event of a delisting. . . . Plaintiff fails to identify

the particular harm that would result from delisting compared with that which it has already suffered, other than stating that it will be 'exacerbated.'"); Follum v. United States, No. 98-CV-0126A, 1999 WL 250746, at *3 (W.D.N.Y. Mar. 5, 1999), aff'd, 199 F.3d 1322 (2d Cir. 1999) ("Plaintiff claims he will suffer irreparable harm if the injunction is not granted because he is already in a precarious financial position and will have to declare personal bankruptcy if he is forced to pay the taxes. However, other than his own affirmation . . . , plaintiff has failed to provide any proof of his financial situation. For example, plaintiff has not provided any documentation regarding his income, his assets or his liabilities. He states that he must pay child support and that his family will suffer if he is forced to pay the tax, but he provides no documentation regarding the child support payments and gives no specifics as to his family situation or his family's other sources of income. Plaintiff also states without support that he will be unable to secure a loan to pay the taxes. There is no indication in his papers that he ever tried to secure such a loan. Nor has he provided any information regarding his credit status.").

**C. Injury to the CFTC and the Public Interest**

"Where, as here, the government is opposing a motion for a stay, there is a merger of the third and fourth factors of the inquiry – the harm to the government and the impact of the grant or denial of a stay on the public interest." Ragbir v. Homan, No. 18-CV-1159 (PKC), 2018 WL 3038494, at *3 (S.D.N.Y. June 19, 2018) (citing Nken, 556 U.S. at 435). The public's and the CFTC's interests in market integrity and compliance with the Commodity Exchange Act and the regulations promulgated thereunder would not be served by staying this Court's judgment, which is the product of Defendants' flagrant violations of their legal obligations. See Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 424 (2d Cir. 2004) ("[G]overnment action taken in furtherance of a regulatory or statutory scheme . . . is presumed to be in the public interest");

City of New York v. Golden Feather Smoke Shop, Inc., No. 08-CV-3966(CBA), 2009 WL 2612345, at *43 (E.D.N.Y. Aug. 25, 2009) ("[T]he public interest would not be served by permitting the defendants to continue to engage in conduct that this Court has concluded is unlawful."); S.E.C. v. Grossman, No. 87 CIV 1031 (SWK), 1987 WL 9192, at *2 (S.D.N.Y. Mar. 30, 1987) ("[T]he equitable relief the SEC seeks, in the form of an injunction against further violation of the securities laws, implicates the public's interest in the integrity of the stock market. . . . [S]taying this case . . . could result in . . . serious injury to the public interest.").

* * * *

Having considered the four factors relevant to determining a stay motion, the Court concludes that Defendants have not met their "heavy burden" to demonstrate that a stay pending appeal is warranted.

## III. DEFENDANTS' FAILURE TO POST A BOND

Defendants have not posted a bond with respect to the civil monetary penalties, and thus have not met the requirements for a stay under Federal Rule of Civil Procedure 62.[12] (Pltf. Opp. (Dkt. No. 114) at 24-25) Rule 62 provides that,

> [a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or

[12] There is conflicting authority as to whether a stay of a monetary judgment requires the movant to satisfy the traditional stay factors – including likelihood of success and irreparable harm – in addition to Rule 62's requirements, or whether satisfaction of Rule 62's requirements is alone sufficient. See Conte v. Cty. of Nassau, No. 06-CV-4746 (JFB) (ARL), 2015 WL 13720237, at *2 (E.D.N.Y. June 4, 2015) (collecting conflicting case law). Because Defendants have not satisfied either the traditional stay factors or Rule 62's requirements, the Court need not resolve the issue.

> other security and remains in effect for the time specified in the bond or other security.

Fed. R. Civ. P. 62(b). The Second Circuit has explained that "[t]he purpose of the rule is to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed," and, as such, a district court "may, in its discretion, waive the bond requirement if the appellant provides an acceptable alternative means of securing the judgment." In re Nassau Cty. Strip Search Cases, 783 F.3d 414, 417 (2d Cir. 2015) (quotation marks omitted).

The Second Circuit has instructed district courts to consider the following "non-exclusive" factors in determining whether waiver of the bond requirement would be appropriate:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post bond would place other creditors of the defendant in an insecure position.

Id. at 417-18. These factors "are a tool geared toward ensuring a meaningful outcome for the prevailing party, and not a device for easing the judgment burden on the losing party." Petersen-Dean, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., No. 19 CIV. 11299 (AKH), 2020 WL 1989493, at *3 (S.D.N.Y. Apr. 24, 2020); Leevson v. Aqualife USA Inc., No. 14 CIV 6905 JBW VMS, 2017 WL 6541766, at *2 (E.D.N.Y. Dec. 8, 2017), report and recommendation adopted, 2017 WL 6550683 (E.D.N.Y. Dec. 21, 2017) ("The bond requirement is not designed to protect the judgment debtor's ability to continue in business.") (internal quotation marks omitted).

Defendants have represented to the Court that they lack the funds to post a bond (Pltf. Opp. (Dkt. No. 114) at 25), and their papers portray the state of their finances as bleak. (Def. Reply (Dkt. No. 117) at 7; Moore Aff. (Dkt. No. 118) ¶ 8) Defendants' inability to post a

bond "is determinative as to factors two, three, and four."[13] Moore v. Navillus Tile, Inc., No. 14 CIV. 8326, 2017 WL 4326537, at *2 (S.D.N.Y. Sept. 28, 2017) (finding that movant's inability to post a bond demonstrated that it lacked the funds to pay the judgment after the appeal). Indeed, "a concession of inability to pay is often 'determinative'" of the entire Rule 62 inquiry. John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 649 (S.D.N.Y. 2018) (quoting Moore, 2017 WL 4326537, at *2).

Because Defendants have not demonstrated that the judgment would be adequately secured absent a bond, the Court denies Defendants' motion to stay the execution of judgment for monetary relief.

[13] In their reply brief, Defendants suggest that they might secure the judgment by posting "equity in [eFloorTrade] as a substitute for a surety bond," if the Court were to stay injunctive relief. (Def. Reply (Dkt. No. 117) at 3) The Court has already concluded, however, that a stay of injunctive relief is not warranted. Moreover, Defendants have submitted no evidence that such a bond is a feasible option. The value of eFloorTrade is, for example, a mystery.

**CONCLUSION**

For the reasons stated above, Defendants' motion for a stay of judgment pending appeal (Dkt. No. 107) is denied. Defendants' alternative request for a temporary stay is granted to the extent that the judgment will be stayed for seven days to allow Defendants to seek a stay from the Court of Appeals.[14]

Dated: New York, New York
May 7, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge

[14] See Rodriguez v. DeBuono, 175 F.3d 227, 235-36 (2d Cir. 1998) ("[B]rief stays for a matter of days are frequently issued when a district court denies an open-ended stay pending appeal. They give the appellate court an opportunity to decide whether an additional stay and an expedited appeal should be granted."); D'Amico Dry D.A.C. v. Prim era Mar. (Hellas) Ltd., No. 09-CV-7840 (JGK), 2019 WL 1284073, at *3 (S.D.N.Y. Mar. 20, 2019) (denying request for stay pending appeal but granting 14-day stay to allow Defendants to seek a stay from the Second Circuit); Front Carriers Ltd. v. Transfield ER Cape Ltd., No. 07 CIV. 6333 (RJS), 2010 WL 571967, at *1 (S.D.N.Y. Feb. 15, 2010) (granting eight-day temporary stay).